WRIGHT *v.* LA MAY.

LANDLORD AND TENANT—LEASE—CONSTRUCTION—FIXTURES—BET-
  TERMENTS—TITLE.
  Where the lease of a building for hotel and saloon purposes
    provided that the tenant might make alterations subject to
    the approval of the landlord, or of an architect, in case of
    their failure to agree, and that "all improvements, better-
    ments, and changes or alterations" should, on the expiration
    of the lease, belong to the landlord, the quoted words extended
    only to the alterations of the building, and not to saloon fur-
    niture placed in the building by a brewery company under a
    contract with the tenant providing that he should have the
    use thereof while he sold the company's beer.

Appeal from Wayne; Brooke, J. Submitted June 15,
1908. (Docket No. 99.) Decided December 21, 1908.

Bill by Leora B. Wright against Louis La May, the
Stroh Brewery Company, and James D. Burns, sheriff,
to restrain an action of replevin. From a decree dismiss-
ing the bill, complainant appeals. Affirmed.

*John E. Moloney*, for complainant.

*William E. Henze* (*Alex. J. Groesbeck*, of counsel),
for defendants Stroh Brewery Co. and James D. Burns.

McALVAY, J. Complainant, who is the owner of a 20-
foot lot on which is erected a 3-story brick building, being
No. 59 Cadillac Square, in the city of Detroit, leased these
premises on November 28, 1904, to defendant, Louis La
May, by written lease, for the term of five years from
and after May 1, 1905, for hotel and saloon purposes;
possession to be taken on the last-mentioned date. This
lease contained the following provision:

"The first party grants the second party the right to
alter and remodel said premises; provided, however, that

no alteration shall be made without first submitting the plans thereof to, and receiving the sanction of, first party. In case first and second parties cannot agree on such alterations, the same shall be submitted to an architect to be chosen by first party and paid by second party, and such alterations shall then be made according to his direction and under his supervision. All improvements, betterments, and changes or alterations shall, at the expiration of this lease, be and remain in said premises and belong to first party as a further consideration for this lease."

Under the terms of this lease, said defendant entered into possession of the premises. After certain negotiations with defendant the Stroh Brewery Company were had by defendant La May, relative to using its product in the business he was to carry on under his lease, on May 26, 1905, these two defendants entered into a written contract relative to the matter, the material parts of which are as follows:

"Agreement between the Stroh Brewery Company, a corporation, party of the first part, and Louis La May, party of the second part, both of Detroit, Wayne county, Mich., to wit: In consideration of the party of the first part agreeing with and promising to the party of the second part to change the front of the building at No. 59 Cadillac Square, Detroit, Mich., occupied by and under lease to the party of the second part, at a cost of four hundred and sixty-five ($465) dollars, and to also furnish to the party of the second part certain hotel and saloon furniture and fixtures, at an approximate cost of eight hundred ($800) dollars, more or less, for free use in said building while exclusively buying, handling and selling the beer made or sold by the party of the first part, the party of the second part agrees with and promises to the party of the first part to exclusively handle, buy, and sell the beer made or sold by the party of the first part for at least five (5) years from May 1, 1905, and to pay for said beer daily, or at least once a week, at the market prices. The party of the second part also expressly promises to and agrees with the party of the first part that should he, at any time before the expiration of the five years stipulated, violate this agreement, he will reimburse the party of the first part for the money invested by the party of the first part for changing the front of said building, and

will also buy the above-mentioned hotel and saloon furniture and fixtures at cost price, as evidenced by the bills."

This contract was executed and delivered after the officers and agents of the defendant brewery company had read and were fully informed of the terms of the lease of complainant to defendant La May. On June 14, 1905, the two defendants named entered into another contract of precisely similar import as the one above quoted, except that the amount to be expended for repairs and alterations to the front of the building was increased to $600. The front was changed and paid for by the brewery company, to the amount of about $600. In the part of the building to be used for a saloon, defendant brewery company, under its agreement in writing with La May, put in a partition across the width of the building about 10 feet back from the front. It is 7 feet high and fastened to the floor and side walls. It has 3 doors to allow people to pass in and out. The brewery company also installed a 22-foot quartered oak bar with mahogany top and 10-inch marble base, one 22-foot rail with lift-up brackets; one 20-foot quartered oak 3-arch mirror frame with plate glass mirrors; one 22-foot copper work board with ice box, bottle racks, and rinse basins; one Chicago sectional ice box; one Champion pump outfit complete. The furniture and fixtures in the saloon were specially designed and made to order for that building. The bar was fastened to the floor by screws through angle irons. In front of it fixed into the floor a mosaic tiling and drain was put in by cutting out the flooring, and about 3 inches of the joists, which was cemented along the edge of the base of the bar to prevent water getting through. The sectional ice box was installed in the basement and connected with the bar and fixtures above by pipes passing through holes made in the floor. The bar and work board weigh 500 pounds, the back bar and mirrors 1,500 pounds, and the sectional ice box 1,000 pounds. All of these improvements were made and the above equipment installed by August 3, 1905. Defendant brewery company paid for the bar equipment,

improvements, and fixtures mentioned and for the installation of all the plumbing and building the mosaic tile drain. Altogether there were seven holes made through the floor for connections with the plumbing and ice box below, which were made in such a manner that these articles installed by the brewery company cannot be removed without cutting the pipes.

On January 30, 1906, defendant brewery company presented to La May for his signature a third agreement, which he signed. All the record shows as to this agreement is the testimony of La May, who says that an officer of defendant company presented a paper to him and asked him to sign it, which he did without reading it, and that he never knew its contents until the day of trial. The right to the possession of this property is claimed under this agreement. The material parts of this agreement are as follows:

"It is hereby agreed between the Stroh Brewery Company of Detroit, Wayne county, Mich., party of the first part, and Louis La May, of the same place, party of the second part, that, whereas, the said party of the second part desires and agrees to buy beer made or sold by the party of the first part from said party of the first part at the market price or prices established by the party of the first part to their trade in general; and, whereas, the said second party desires said first party to loan or lease to him certain restaurant and saloon furniture and fixtures such as counters, back counters, mirrors, work boards, pumps, signs, etc., more particularly and specifically described as follows, viz.: One 22-foot white quartered oak bar with mahogany top and 10-inch marble base on bar; one 20-foot refrigerator back bar; one 20-foot mirror frame; one 22-foot brass foot rail; one 22-foot copper work board; one 15-foot white oak partition; one Champion pump outfit complete; one Chicago ice box; one cellar ice box; one round table; eight square tables; three dozen No. 41 chairs; one plate glass sign; two electric signs; four drum signs; as well as any other furniture and fixtures that hereafter may be furnished to the party of the second part by the party of the first part—and it being expressly understood and agreed between the parties

hereto that all of said above-described property shall remain the property of and belong to the said party of the first part, and it being further expressly understood and agreed that the party of the first part shall loan or lease said above-described property to said second party only and solely during the time that said second party shall continue to purchase beer from said first party in the manner above mentioned, the selling of beer to said second party by said first party as above mentioned being the only consideration to said first party for entering into this agreement: Therefore, it is agreed by said first party that said first party will and does hereby loan or lease said above described property to said second party in the manner and for the time and for the consideration above specified, and it is agreed by said second party that he will purchase exclusively beer from said first party in the manner above specified, and he will not assign or transfer or sublet any of said property, nor remove said property or any part thereof from No. 59 Cadillac Square, in the city of Detroit, without the consent of the said first party first obtained in writing, indorsed hereon; and it is further agreed that, when said second party shall cease to purchase beer from said first party in the manner above described, he will deliver back to said first party on demand all and every part of the above-described property in as good condition as when received, reasonable wear and tear thereof excepted; and the said second party hereby expressly waives all claims for damages to building, furniture, etc., or any claims for damages of whatever kind or description that may be occasioned by said first party in gaining possession of said property."

Defendant La May discontinued the purchase of the Stroh Brewery Company beer November 23, 1907. The company then brought replevin for the property which it had delivered to La May and installed in the premises he occupied under his lease, under the agreement of June 14, 1905. The writ of replevin was delivered to defendant Burns, as sheriff of Wayne county, for execution. It commanded him to take into his possession and remove the property hereinbefore described which the brewery company had installed in the premises occupied by La May. These facts being brought to the attention of com-

plainant, she at once filed her bill in this cause, setting forth the facts above related, and claiming that this property could not be removed without her consent; it having been placed in and attached to her premises under the conditions of La May's lease. She asked for and was granted a temporary injunction. The court denied any relief and dismissed her bill of complaint. She has appealed to this court, and a restraining order has been issued out of this court to maintain the statu quo, pending this appeal.

Complainant's claim is that this property in dispute is such as in contemplation of the lease to La May was to remain on the premises and belong to her, and that the Stroh Brewery Company, under the circumstances, stands in the shoes of La May, having placed the property in the way already explained in her building, with full knowledge of the terms of the lease. The case turns upon the construction to be given to this lease. The parties agreed that "all improvements, betterments, and changes or alterations shall at the expiration of the lease be and remain in said premises and belong to first party as a further consideration for this lease." In construing this clause, the purposes for which the property was leased should be considered. In order to occupy for saloon purposes, chairs, tables, and other saloon furniture would be necessary and within the contemplation of the contract of leasing between complainant and defendant La May. We cannot avoid the conclusion that the brewery company entered into contract relations with La May with notice of the lease and is bound by its provisions to such extent as it made "improvements, betterments, changes, or alterations" within its fair intent. This had been recognized by the brewery company in the changes made to the front of the building. Of this saloon furniture, it certainly was not intended that the chairs and tables and articles of that class should come within the fair intent of the lease, nor that the bar and ice boxes, usual and necessary in the saloon business, required her approval; but

the permanent tile and drain put into the floor and the partition put up, extending across the entire building and affixed to the floor and the walls, should be considered within the terms of the lease, and included in "all improvements, betterments, changes or alterations," which were to belong to complainant.

The decree should therefore be modified, and a decree entered in favor of complainant as to the oak partition herein above described, which is found to be the property of complainant, and that defendants be enjoined perpetually from removing the same or interfering therewith. In other respects the decree should be affirmed, complainant to recover costs of this court, and neither party to be allowed costs of the circuit court.

GRANT, C. J., concurred with McALVAY, J.

OSTRANDER, J.    I am satisfied that the understanding of La May and the brewery company was that alterations of the building became a part of the building, and that the furniture, which is the property here in question, should not become a part of the building, but should remain the property of the brewery company.    Assuming that the brewery company is bound if, and as, La May is bound by the provisions of the lease under which complainant asserts her right to this property, it is a fair interpretation of the lease which limits the meaning of the words "all improvements, betterments, changes or alterations" to the alterations and the remodeling of the building for the making of which there is express permission given in the lease, plans for which are required to be submitted to the lessor.

The decree of the court below should be affirmed, with costs to defendants.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred with OSTRANDER, J.