GEORGE POWELL, Appellant, v. ED PLANK et al., Respondents.

Springfield Court of Appeals, February 7, 1910.

1. **MINES AND MINING: Lease: Contract for Purchase: Relation of Parties.** Under a mining lease which also provided for the purchase of the land, the relation of landlord, and tenant existed, and a subsequent contract was made changing the terms of purchase to some extent but, when construed in connection with the former contract and the actions of the parties thereunder, *held*, not to have changed the status of lessor and lessee between the parties.

2. ———: **Landlord and Tenant: Fixtures: Right to Dispose of Mining Machinery on Leased Land.** Where a mining company while lessee, placed all the machinery on the land held under the lease, the mining machinery was a chattel and could be sold and mortgaged by the company.

Powell v. Plank.

3. ———: ———: ———: **Right to Remove Engine House From the Leased Land.** 'Where an engine house owned by a tenant on leased land was of little value and was built around the machinery after it had been placed, and was not built as a house upon the land for any purpose connected with the land, but only for the purpose of temporarily covering the machinery, and was not intended as a permanent building in which to house the machinery, *held*, that it could be removed, mortgaged or sold by the tenant under the same circumstances as could the machinery itself.

4. ———: ———: **Tenant at Will: Duty to Remove Machinery.** Where a mining company remains on land after its lease and option to purchase have expired, its position is that of a tenant at will, and it is not required to remove the machinery from the land until the owner has given notice to quit, as required by Revised Statutes 1899, section 4110.'

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*J. D. Gustin* for appellant; *G. C. Dalton* of counsel.

(1) The terms of this clause are plain and unambiguous and required no construction. It was the duty of the court to give it effect according to its terms. Koehring v. Muemminhgoff, 61 Mo. 403; Staluth v. Guaranty Co., 81 Mo. App. 627; Electric Co. v. Bry., 88 Mo. App. 135; Meyer v. Christopher, 176 Mo. 580; Halliday v. Lesh, 85 Mo. App. 285; Drug Co. v. Sanders, 70 Mo. App. 221; Greenleaf on Evidence (Redfield Ed.), sec. 275, 277; 2 Parsons on Contracts (6 Ed.), 500 (2) The buildings and machinery in this case are part of the real estate and the property of the plaintiff. The Jewell Iron Company, at the time of placing the improvements on the land, was a vendee in possession under a contract of purchase, and its annexations became fixtures at the moment of annexation. Washburn on Real Property (4 Ed.), 5; Seiberling v. Miller, 209 Ill. 443; Inv. Co. v. McKinney (Ind.), 74 N. E. 1001; Mfg.

Co. v. Bathgate (Okla.), 79 Pac. 903; Voorhis v. Freeman, 2 Watts & S. (Pa.), 116; Iron Works v. Hitt, 49 Mo. App. 472; Hunt v. Railroad, 76 Mo. 115; Ewell on Fixtures, 57; 19 Cyc., 1061; Markle v. Stackhouse, 65 Ark. 24; Perkins v. Swank, 43 Miss. 349; 13 Am. and Eng. Ency. 672; 3 Current Law, 1432. (3) But aside from the contract status of the iron company, the annexations made to plaintiff's land are fixtures, measured by every other test applied by the courts. A building is *prima facie* a fixture. 5 Current Law, 1433; Beckwith v. Boyce, 9 Mo. 560; Schlemmer v. North, 32 Mo. 206; Thomas v. Davis, 76 Mo. 72; 5 Ency. Evidence, 769. (4) If the mortgagee of a tenant would remove the tenant's trade fixtures, he must do so during the tenant's term. Donnewald v. Real Estate Co., 44 Mo. App. 350; Morey v. Hoyt, 62 Conn. 543; Fitzgerald v. Anderson, 81 Wis. 341; Smith v. Park, 31 Minn. 70; Bush v. Havird (Idaho), 10 A. and E. Ann. Cas. 107.

*W. P. Elmer* and *J. M. Stephens* for respondents.

(1) The general rule of law is that in the absence of an express agreement to the contrary, all machinery, fixtures and appurtenances placed on leased mining premises by the lessee are personal property and removable by him at the expiration of the lease, or within a reasonable time thereafter, if same can be done without injury to the mines. 20 A. and E. Ency. Law (2 Ed.), 786; Thomas v. Davis, 76 Mo. 73; Richardson v. Koch, 81 Mo. 264; Springfield Co. v. Cole, 130 Mo. 1; Arnold v. Benedict, 92 Mo. App. 159; Mills v. Inc. Co., 95 Mo. App. 218; Brown v. Baldwin, 121 Mo. 126. (2) The buildings, boiler, engine and all machinery installed by the company were trade fixtures and removable by it or its mortgagee. 13 A. and E. Ency. 642, 644; Finney v. Watkins, 13 Mo. 291; 8 Words and Phrases, 7042; Lacey v. Gibony, 36 Mo. 320; Iron Works v. Mier, 126 Mo. App. 582, 105 S. W. 29; McClain v. Cunning-

ham, 113 Mo. App. 519, 87 S. W. 605; Pile v. Holloway, 129 Mo. App. 593, 107 S. W. 1043; Morrison v. Sohn, 90 Mo. App. 76.

STATEMENT.—Action by injunction by which plaintiff seeks to restrain defendants from removing certain mining machinery and tools from land owned by plaintiff. Bond was given and a temporary writ issued, and at the trial defendants appeared, filed a general denial and motion to dissolve the injunction. Upon trial, the court found for plaintiff as to some of the property described in the petition and made the injunction perpetual as to that. As to the property now in controversy, the recital of the judgment is as follows:

"And the court, after hearing the testimony, finds that defendants are the owners of the cable attached to the drumhead and used to draw ore from the mine, the boiler, tubs, buckets, ropes, mine cars, and appurtenances, and the engine and engine house (except the foundation for the engine and rough and hewn timbers attached to the same), together with all tools and appurtenances to the said property belonging, and it is by the court adjudged that the temporary injunction heretofore granted, be, and the same is hereby, as to said property, dissolved." From this part of the judgment plaintiff has appealed.

This controversy grows out of the following state of facts.

Plaintiff was the owner of certain lands in Dent county, Missouri, on which was located an iron mine, which had been operated to some extent, and in 1906, had some improvements in the way of rails, trestles, top houses, etc., of the value of forty to fifty dollars. In September, 1906, the plaintiff and his wife entered into a contract with a corporation known as the Jewel Iron Company, in which contract it is recited that the plaintiff herein sold to the mining company a tract of 440 acres of land upon which this mine was located for the consideration of thirty thousand dollars—fifteen thou-

sand of which was to be paid on or before the first day of September, 1907; eight thousand of which was to be paid on September first, 1908; and seven thousand dollars on September the first, 1909; deed to be executed when the first payment of fifteen thousand dollars was made. The deferred payments to bear six per cent interest from September first, 1907, and be secured by mortgage upon the land. This contract also contained the following provisions:

"It is further mutually understood and agreed by and between the parties aforesaid that said party of the second part may enter immediately into possession of the land above described, and all of the buildings on said premises except such as are rented to Plank and Williams, and the small house in the little field west of the county road, known as the little orchard, for purpose of prospecting for and mining ore upon the same. Said party of the first part reserving the right to remove all growing crops now standing upon said land and the use of said land for farming purposes *until this deal is closed,* said party of the first part in no way interfering with the operations of the said second party in its prospecting and mining for ores, and the said party of the second part to interfere as little as possible with the crops and the orchard upon said land, and that it will not make alterations or changes in the buildings *so leased and to be occupied by them until this deal is closed."* (Italics are ours.)

. . .

"It is further mutually understood and agreed that said second party shall pay as rent for the use of the buildings on said premises which they are authorized to occupy, under the terms of this agreement, the sum of $20 per month, payable monthly in advance, commencing October 1, 1906, and will also pay a royalty of thirty-five cents per ton of 2,240 lbs., for all ore mined and shipped from any part of said premises before September first, 1907. That before the shipment of ores from said premises, said party of the second

part will secure said party of the first, the payment of royalties upon ores so shipped; such payments to be made within sixty days after shipment of the ore, or as soon as second party receives pay for the ores so shipped and sold, and that said rent and royalty so paid shall be deducted from the said $15,000, which is due September first, 1907, under this contract. . . .

"This contract is executed in duplicate.

"JEWELL IRON COMPANY,

"By C. A. BARBER, President.

"(Corporate Seal.)

"Attest: E. C. VAN WAGENEN, Secretary.

"Mining must be carried on continuously after October 1, 1906, except unavoidably hindered, and all conditions mentioned in above agreement must be properly carried out, otherwise this agreement will be null and void.

"GEORGE POWELL,

"MARY A. POWELL."

Under this contract, mining continued up until July, 1907, and during this time, considerable quantities of iron ore were removed and the mining company had placed a boiler and probably all of the machinery and tools, now in controversy, upon the land. At this time, July, 1907, an agent of the mining company brought to this mine a prospective purchaser for a large block of stock in the mining company. After an examination, this would-be purchaser objected to the condition in the contract requiring the payment of $15,-000 September the first, 1907, and in order to accommodate the mining company and to meet the objections of this prospective purchaser of stock in the company, the plaintiff and the mining company entered into another contract, dated July ——, 1907, by which the same land was purported to be sold to the mining company and the payments were changed as follows:

"$4,250 on or before the first day of September,

1907; $5,000 on the first day of September of each of the years following, 1908, 1909, 1910, 1911, and 1912.

"All of the deferred payments to bear interest at six per cent from September first, 1907, and be secured by mortgage upon the land. Deed to the land was to be executed on payment of $4,250, September first, 1907."

This contract also contained the following clause:

"It is hereby further agreed between the parties that said party of the second part may retain possession of all such parts of said premises as it now occupies, and pursue its business of mining for ores *during and until this contract is finally consummated as contemplated on the first day of September, 1907.* (Italics are ours.) . . .

"It is further agreed that time is of the essence of this agreement."

After the execution of this contract mining operations were continued as before, but no payment was made September first, and no deed executed, and these mining operations continued until February 20, 1908, at which time, the mine was closed down for want of funds. On March 24, 1908, the Jewell Mining Company executed a chattel mortgage to two of defendants, Plank and Williams, which covered all the property in controversy here and some other property, and this mortgage was afterward foreclosed, the property purchased by one of defendants, and defendants now claim under said mortgage and at the institution of this suit, were attempting to remove the property from the land of plaintiff.

COX, J.—It is clear to us, and it is conceded by counsel in the argument that the contract of September, 1906, was a lease with an option to purchase, and that while the mining company was in possession, under that contract, the relation existing between the plaintiff and the mining company was that of lessor and lessee. Appellant's counsel now contends, how-

ever, that the contract made in July, 1907 superceded the contract of 1906, and was in itself an entirety, and was a contract of sale without any lease provisions, and, hence, that the position of the mining company after the execution of this contract was that of vendee under contract of purchase, and, hence, the mining machinery and tools used in the operation of the mine became fixtures and a part of the realty, and could not be mortgaged, sold or removed, after his right to enforce the contract of purchase became forfeited by lapse of time.

In determining the rights of the parties in this action it is necessary at the outset to ascertain their relation to each other as fixed by the contracts offered in evidence and the chattel mortgage. In construing the contract of July, 1907, it will be necessary to consider it in the light of the surrounding circumstances, the condition of the parties at the time and the purpose for which it was executed. This contract, after providing for the sale of the land and the manner in which it was to be paid for, the dates at which the payments were to be made and the deed executed, then contains this clause:

"It is hereby further agreed between the parties that said party of the second part may retain possession of all such parts of said premises as it now occupies, and pursue its business of mining for ores, during and until this contract is finally consummated, as contemplated, on the first day of September, 1907."

This clause cannot be properly understood without referring to the first contract, under which the mining company was in possession of the land, and operating the mine at the time of the execution of this contract. This clause, above quoted, is evidently intended to keep in force the provisions of the former contract as to possession and the business of mining, and when we look to the former contract we find that under it the mining company was to pay rent for the buildings it

occupied and pay royalty upon the ore which it mined, and if the mining company should elect to purchase the property, the amount paid as rent and royalty was to be credited upon the first payment of $15,000 due September 1, 1907. The provision in the contract of July, 1907, is that the possession of the mining company and the continuation of its mining business should continue "during and until this contract is finally *consummated,* as contemplated, upon the first day of September, 1907." Now to consummate, as the term is here used, means to complete, and therefore, it must have been understood by the parties to this contract at the time of its execution, that it was not complete when signed and would not be until the conditions to be complied with on September 1, 1907, had been performed, and, as if to emphasize this provision of this contract it was provided in another clause that time should be of the essence of this agreement. In view of this language and the fact that this contract was entered into in order to meet the objections of a prospective purchaser of stock in the mining company, and the further fact that no payment was ever made on the land, and the plaintiff allowed the mining to continue without protest or demand for possession, and claimed royalty upon all ore mined, it seems clear to us that the plaintiff and the mining company have, by their own conduct, mutually acquiesced in, construed this last contract to mean practically the same thing as the first except as to the terms of payment in case of an election to purchase. And, furthermore, we think this is the only rational construction to be put upon it. It follows then that the mining company remained in possession as tenant, with an option to purchase, until September 1, 1907, at which time the option expired and after that date its position was that of tenant at will.

Having determined the relation of the parties we next come to the question of their rights to the prop-

erty. It is conceded that the mining company placed all the machinery on the land, and built the engine house. As to the machinery it is clear that it was mining machinery, and hence, was chattel and could be sold or mortgaged. [Brown v. Baldwin, 121 Mo. 126, 25 S. W. 863; Springfield Company v. Cole, 130 Mo. 1, 31 S. W. 922.]

The engine house was of little value—was built around the machinery after it had been placed and was not built as a house upon the land for any purpose connected with the land or its use—disconnected with this particular engine and boiler. It was not intended as a permanent building in which to house machinery, but was temporary in its character, and used solely as a shelter for this particular machinery. It occupied about the same relation to this machinery and the land as would a tent stretched over this machinery for the same purpose, and we think, could be removed, mortgaged or sold, under the same circumstances as could the machinery itself.

It is further claimed by appellant's counsel that this machinery, not having been removed within a reasonable time after the mining company ceased operations, that for that reason it cannot now be removed at all. Having determined that the mining company, after September 1, 1907, was a tenant at will, it follows that they were not required to remove the machinery until the plaintiff had given them notice to quit as provided by the statute. [Section 4110.]

The judgment in this case, as far as complained of, is for the right party, and will, therefore, be affirmed. All concur.