WEEKS-BETTS HARDWARE COMPANY, Respond-
ent, v. ROOSEVELT LEAD & ZINC COMPANY,
Appellant.

Springfield Court of Appeals, February 6, 1911.

1. **LANDLORD AND TENANT: Mines and Mining: Tenant's Right to Remove Improvements.** Plaintiff instituted suit to recover possession of certain mining machinery, consisting of a sludge table, dummy elevator and gas pipe, claiming the same under a chattel mortgage from one of the defendants. The appellant had a mining lease upon the land on which the machinery was located and claimed the machinery under a sub-lease with the same defendant, by the terms of which all improvements and repairs necessary to keep the plant in good running order and repair, which were made by said defendant, were to become the property of appellant. *Held*, under the evidence that the sludge table, etc., were not improvements and repairs put on the property by the sub-tenant in order to keep the plant in good running order and therefore appellant was not entitled to retain the same.

2. ———: ———: ———: Where a lessee under a mining lease erects a mining plant and installs machinery for the pur- pose of mining, cleaning and preparing ore for market, it had the right to remove the same at the end of the term in the absence of a contract to the contrary.

3. ———: **Fixtures: Tenant's Right to Remove Improvements.** The common law rule relating to fixtures and improvements put upon property by a tenant has been relaxed, and what would be a fixture as between vendor and vendee, or mortgagor and mortgagee, would not be between landlord and tenant.

4. ———: ———: ———: The law is liberal toward tenants who make improvements for their own particular use, which can be removed without substantial injury to the rented premises.

5. ———: ———: ———: **Contracts: Construction.** Covenants restricting the tenant's ordinary right to remove trade fixtures are always strictly construed.

6. **CONTRACTS: Construction.** Contracts must be construed with reference to the surrounding circumstances and condi- tions of the parties.

7. **LANDLORD AND TENANT: Removing Fixtures: Waiving Matter of Removal Within Reasonable Time.** When a demand

was made by the plaintiff upon the appellant for the possession of certain mining machinery and fixtures, the appellant claimed to be the owner of the property under a mining lease with its tenant and refused to deliver possession upon such grounds. *Held*, that after suit by plaintiff for possession appellant is in no position to urge that plaintiff forfeited its right to the property by not removing the same within a reasonable time after the expiration of the lease.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright,* Judge.

AFFIRMED.

*W. R. Robertson* for appellant.

(1) Irrespective of the provisions of the lease the sludge table, dummy elevator and appurtenances became a part of the leasehold when placed thereon by the lessees and respondent acquired no interest therein by reason of its chattel mortgage. Donnewald v. Real Estate Co., 44 Mo. App. 350; Ottumwa Iron Works v. Muir, 126 Mo. App. 587; Hopewell Mills Co. v. Bank, 23 N. E. (Mass.) 327; Chatterton v. Saul, 16 Ill. 150, 19 Cyc. 1074. (2) Where the lease provides that all improvements made by the tenant shall, at the expiration of the term, become the property of the lessor, the improvements are not confined to merely such property as the law designates as improvements, and embraces all additions, erections, or alterations made by the tenant during the term. 24 Cyc. 1102. (3) The tenants, in whose stead respondent in this case stands, must remove their fixtures, even though they be trade-fixtures, before the expiration, forfeiture or abandonment of the leased premises and before quitting possession. 2 Taylor's Landlord and Tenant (9 Ed.), 551; Kuhlmann v. Meier, 7 Mo. App. 260; Welch v. Schler, 20 Mo. App. 380.

*Horace Merritt* for respondent.

(1) The provision in the contract that repairs, replacements and improvements should become the property of the Roosevelt Lead & Zinc Co., is a forfeiture provision in the nature of a mortgage on property to be acquired in the future, and will not be permitted nor sustained, being a fraud upon the plaintiff and others who might extend credit or purchase the property from the mortgagor, John W. McClellan & Company. France v. Thomas, 86 Mo. 80; Littlefield v. Lemley, 75 Mo. App. 46; Gregor v. Tavener, 38 Mo. App. 627; Bank v. Bank, 171 Mo. 307. (2) Machinery furnished to the owner of a mine and not intended to become an immovable fixture; does not lose its character of personal property. Whether a chattel becomes a fixture is decided by its real or constructive annexation to the realty; its fitness to the uses of the realty and the intention of the party making the annexation. The last has preeminence and the other two are chiefly of value as evidence to the third. Ottumwa Iron Works v. Muir, 126 Mo. App. 582.

GRAY, J.—This action was instituted in the circuit court of Jasper county, October 30, 1909, by the plaintiff to recover the value of certain mining machinery. At the time the suit was instituted the appellant herein, the Roosevelt Lead & Zinc Company, a corporation, was not made a party defendant. An amended petition was filed in which the following allegation relating to the appellant is found: "Plaintiff states that the Roosevelt Lead & Zinc Company is now in possession of said property and holding same and is claiming to hold some interest in said property and objecting to the plaintiff taking possession of same, and this amended petition is filed for the purpose of bringing said Roosevelt Lead & Zinc Company into court as a defendant that it may set up its claim if any it has." The appel-

lant appeared in obedience to summons and filed its answer consisting of a general denial. The cause was tried without a jury, resulting in a judgment in favor of plaintiff, and the appellant appealed.

The plaintiff's petition alleged that it was the owner and entitled to the possession of one sludge table, about 3600 feet of 2-inch gas pipe; one dummy tailing elevator, including belts, cups and appliances, located on the McKinley lease on the Connor land near Prosperity, Missouri; that the plaintiff was entitled to the possession of said property by virtue of a chattel mortgage executed to it by the defendant, John W. McClellan & Company, on the 20th day of November, 1908, and duly recorded in the office of the Recorder of Deeds of Jasper county, Missouri, and which mortgage was executed for the purpose of securing the payment to plaintiff of two promissory notes amounting to $509.19; that the notes were past due and unpaid, and plaintiff had demanded possession of the property from the defendants, and possession had been refused; and further praying for damages for the unlawful detention and conversion of the property.

The testimony tended to prove that the appellant was the owner of a mining plant and mining lease on a tract of land in Jasper county, known as the Connor land; that the defendant, McClellan & Company had a contract or lease with the appellant for one year, with an option to purchase the mill or lease within the one year; that previous to the time of the execution of that contract, other parties had been in possession of the mill, and operating it under similar contracts. There was no sludge table or dummy elevator at the plant when the contract between the appellant and McClellan was entered into. At one time a sludge table had been used in connection with the plant, but the same had been moved away, and nothing but the foundation remained.

The relation that the sludge table bore to the mining plant was shown by the testimony of the plaintiff's witness, Mr. Weeks, as follows:

"Q. Mr. Weeks, tell the court whether or not the removal and taking away of a sludge table from the mill when it was there in a position this was in, would interfere with the operation of the main mill? A. No, sir, it is not a part. Those additions are of very recent date, the mill run for many years without any sludge apparatus.

"Q. Now, in taking it away, would there still be a complete concentrating plant? A. Certainly.

"Q. The attachment to the mill was merely the connecting of the power to run such table? A. Yes.

"Q. That is all the attachment there was to the mill? A. Yes, throw the belt off and cut out that part.

"Q. And the cable to this dummy elevator was merely a different way of communicating power, one by belt and one by cable? A. Connected by a cable to a different place.

"Q. It was not tied to the cable or a cable belt? A. Yes, a transmission cable.

"Q. The dummy elevator might be taken away without interfering with the operation of the mill? A. It run many years without one.

"Q. How is this sludge table fastened so far as to ground or foundation? A. It has a separate foundation of its own.

"Q. These sludge tables, just tell the court what is necessary in the moving—taking them up and moving? A. Very easy to move. Of course, they are not a very large concern, put them on the wagons, just simply a table, about the same pattern, while they are a great many different makes, they are practically the same."

And on cross-examination:

"Q. Mr. Weeks, the sludge table is set on a cement foundation, is it not? A. I think it is in that case.

"Q. The cement foundation is set in the ground?
A. Yes, sir.

"Q. And the sludge table is the table that is used to further clean the ore that is milled in the concentrating plant? A. No, not further clean the ore of this mill, it is to extract the sludge.

"Q. Let me get at it this way: As a result of operating on the mill proper, as originally constructed, there is simply the jig tanks, crushers and so on, and leaves what is called sludge? A. Yes.

"Q. And in that sludge there is more or less ore? A. Yes.

"Q. This sludge table is used to extract that? A. Yes, sir."

Thus it will be seen that the sludge table and dummy elevator were simply additions to the mill and added to it by McClellan & Company after that company had contracted with the appellant.

It is further shown that in taking away the dummy elevator and sludge table, no injury would be done to the real estate and they were simply "trade fixtures." [Powell v. Plank, 141 Mo. App. 406, 125 S. W. 836.]

There is no dispute about the facts and the rights of the parties must be determined by the construction of the paragraph in the contract between McClellan & Company and the appellant, and reading as follows: "The second party further agreed to keep the mining plant hereby leased in good repair and to make all improvements, repairs and replacements necessary to keep the same in good running order and repair, and to pay for such at their own expense, but such improvements, repairs and replacements, when made, shall become a part of the mill and the property of the first party and shall be delivered to the first party at the expiration of this lease whether by lapse of time or forfeiture."

It is the contention of the appellant that under this clause of the contract, it became the owner of all improvements and additions made upon the mill and

property by McClellan & Company while in possession
of the property under the contract. It is the contention
of the respondent that the clause of the contract does
not include the machinery in controversy.

This contract must be construed with reference
to the fact that plaintiff's evidence tends to prove that
the appellant was not the owner of the land, but only
had a mining lease thereon, and if its mining plant and
machinery were erected for the purpose of mining, clean-
ing and preparing ore for market, then it had the right
to remove the same at the end of its term, and the same
were personal property. [Investment Co. v. Cunning-
ham, 113 Mo. App. 519, 87 S. W. 605.]

We are then confronted with the proposition that
the property in question was personal property and
the parties were dealing with it as such. The common
law rule relating to fixtures and improvements put up-
on property by a tenant, has been relaxed and what
would be a fixture as between vendor and vendee or
mortgagor and mortgagee, would not be between land-
lord and tenant. The property in controversy when it
was purchased, was undoubtedly the property of Mc-
Clellan & Company, and if it ever became the property
of the appellant, it was because it was transferred to
the appellant by McClellan & Company by the terms
of the contract just quoted.

Contracts must be construed with reference to the
surrounding circumstances and the condition of the par-
ties. The law is liberal toward tenants who make im-
provements for their own particular and temporary use,
which can be removed without working substantial in-
jury to the rented premises. [Bircher v. Parker, 40 Mo.
118; State v. Newkirk, 49 Mo. 84.]

It will be noticed the contract placed upon McClel-
lan & Company the obligation to keep the mining plant
in good repair and to make all improvements, repairs
and replacements necessary to keep the same in good
running order and repair. And such improvements,

when made, became a part of the mill and the property of the first party. The contract does not provide that all improvements placed upon the property shall become the property of the appellant, but only such improvements and repairs as were necessary to keep the plant in good repair.

It seems to us that the primary purpose of this clause was to require McClellan & Company to keep the property in repair and to make improvements necessary therefor. And. it does not provide that all improvements placed upon the plant shall become the property of the appellant, but only such improvements as become necessary to keep the property in running order and repair. If it was the intention that the appellant should have all the improvements placed upon the property, why did not the contract so state, instead of limiting the right of appellant to such improvements as were necessary to keep the mill in repair. The testimony shows that the sludge table and dummy elevator were no part of the mill when the contract was entered into. The mill was complete and in running order without them, and McClellan was not required to purchase them and install them in order to comply with his contract.

Covenants restricting the tenant's ordinary right to remove trade fixtures are always strictly construed. [Fox v. Lynch, 64 Atl. 439; Montello Brick Co. v. Trexler, 167 Fed. 482; Wright v. LaMay, 118 N. W. 964; Hey v. Bruner, 61 Pa. 87; Bernheimer v. Adams, 67 N. E. 1080, 175 N. Y. 472.]

In Montello Brick Co. v. Trexler, supra, the landlord had leased premised upon which were three complete brick plants at the time the lease was entered into. The lease contained the following clause: "At the expiration of the term hereby created, the lessee shall return and surrender to the lessor the demised premises in good order and condition, and with all improvements, additions and extensions without any compensa-

tion to be paid for said improvements, additions and extensions." The lessee erected upon the leased premises an additional plant, and afterwards was adjudged a bankrupt. The lessor claimed the new plant under the terms of the lease, but the court held that the clause in the lease restricting the right of the tenant to remove his "trade fixtures," must be strictly construed, and it did not apply to the new plant erected by the lessee upon the premises.

In Hey v. Bruner, supra, the lessees covenanted: "And at the expiration of the said term shall and will quietly and peaceably yield up and surrender the possession of the said premises demised, together with all and every the improvements and additions which they the said lessees, shall construct and make thereon unto the lessor, in good order and condition. reasonable wear and tear excepted. Lessees shall forthwith take possession, and shall with all convenient dispatch make alterations, additions and improvements of a permanent character to consist of items agreeably to a specification and plan to be approved by the lessor, and to introduce machinery necessary to the purpose of their business, hosiery manufacturing, permanent additions and improvements to remain on the property at the expiration of this lease and to belong to the owners of the fee to said premises." It was held that although the lessor by this lease, intended that the machinery installed should belong to him at the expiration of this lease, yet he did not expressly provide, and therefore, there was no doubt under the lease that lessee had a right to remove the fixtures, consisting of engine, boiler, shafting, hosiery machinery, etc., as trade fixtures.

In Fox v. Lynch, supra, the defendant leased the premises for saloon purposes and agreed with the lessor to keep the same in repair, and at the end of the term to surrender the premises in as good condition as the same were when received, ordinary wear and tear ex-

cepted. During the term of the lease, the lessee removed all the old fixtures and installed others in their stead. In a contest between him and the landlord, the court held that he had a right to remove all the new fixtures substituted for the old ones on the premises at the time he entered into his lease.

When we construe this contract as the law says we shall, strictly in favor of the rights of the tenant, then we must hold that the sludge table and dummy elevator were not improvements and repairs placed on the property by the tenant in order to keep the same in proper repair and running order, and that only such improvements and repairs became the property of the appellant as were necessary for that purpose.

The appellant also claims that the property was not removed from the premises at the expiration of the rights of McClellan & Company, and therefore, the right to take the same was forfeited. The appellant claimed to be the owner of the fixtures under the contract, and based its right, when respondent asked for the property, upon such grounds. By so doing, it is in no position to now urge that respondent forfeited its right to the property by not removing the same within a reasonable time. [Bernheimer v. Adams, 67 N. E. 1080, 175 N. Y. 472.]

It necessarily follows that the judgment is for the right party and should be affirmed. All concur.