George C. Collins, Appellant, v. Harry S. Truman et al., Respondents.[*]

Kansas City Court of Appeals. March 4, 1929.

---

[*]Corpus Juris-Cyc References: Contracts, 13CJ, section 514, p. 542, n. 30; Landlord and Tenant, 36CJ, section 724, p. 90, n. 79.

*Grant I. Rosenzweig* and *Harry Howard* for appellant.

*Walter W. Calvin* for respondent.

ARNOLD, J.—This is an equity suit instituted for the purpose of restraining defendants from using a certain room in the Bonaventure hotel building, located at the southeast corner of Independence boulevard and Park avenue, in Kansas City, Missouri, as a court room for the official use of a justice of the peace. A bond was executed and a temporary injunction issued restraining such use.

The cause was tried before the judge of division 8, of the circuit court of Jackson county, Missouri, and a demurrer to plaintiff's evidence was sustained. An involuntary nonsuit was taken with leave to move to set the same aside, and thereafter plaintiff filed such motion which was overruled and plaintiff has appealed from this ruling.

Plaintiff alleges that defendants Truman, Vrooman and Barr are the duly elected and acting judges of the county court of Jackson county, Missouri; that John M. Kennedy is the duly elected, qualified and acting justice of the peace in and for the eighth district of Kaw township in said county; that defendant Boxley is the duly appointed and qualified counselor for said county court; that defendant Jankowski is the owner of the said Bonaventure Hotel, its grounds and premises; that the building comprising said hotel is four stories in height, with store rooms and lobby on the first floor thereof, facing north on Independence boulevard; that the three upper stories consist of rooms single and *en suite* for guests. The lobby extends the full width of the building north and south, and is used for lobby purposes by guests of the hotel. Immediately west of the lobby and connected therewith by large double doors is a room approximately 20x70 feet, designed and built for a dining room and restaurant for the accommodation of guests of the hotel, and which had been used for such purpose. Plaintiff is the lessee in possession of the hotel building, under and by virtues of a lease executed September 15, 1922, and running for a period of seven years, executed by Albert Marty et al., then the owners in fee. The said instrument leased to plaintiff all of the said building excepting a drug store room on the first floor in the west part thereof and two store rooms in the east part of the first floor. The remainder of the first floor consists of the lobby and dining room, another room west of said dining room and a room immediately east of said lobby.

Sometime in January, 1926, defendant Jankowski became the owner in fee of the premises, subject to the existing lease and thereafter plaintiff paid the rent as expressed in the lease to the new owner. On or about May 29, 1926, plaintiff and Jankowski entered into a supplemental agreement referring to the original or Marty lease, whereby Jankowski, among other things, agreed as follows:

"Party of the first part agrees to put no other business in the room adjoining the lobby on the west, except a restaurant. Pending occupancy by tenant who is both satisfactory to the lessee and lessor,

party of the first part agrees to give party of the second part the privilege of using said room for kitchen and dining room privileges for his family.''

The first sentence just quoted furnishes the bone of contention herein. Plaintiff contends the attempt of defendants to enter into a lease whereby the said room would be used for a court room for a justice of the peace would be violative of the terms of his lease. Plaintiff insists the word ''business'' as used in said lease applies to courts, while defendants are of the contrary view. The chancellor held the word ''business'' too limited in meaning to include the affairs of the court. Definitions and citations *in extenso* are set forth in the briefs, including a quotation from the second chapter of the Gospel according to St. Luke, as follows:

''And he said unto them (his parents), how is it that ye sought me? Wist ye not that I must be about my Father's business?''

And from this plaintiff argues the word ''business'' includes in its scope churches and charities. It further support of plaintiff's charge that the chancellor erred in his ruling, definitions are presented. First, we have Webster, as follows:

(1) ''Employment; occupation, profession; calling; vocation; means of livelihood; that which occupies the time, attention and labor of men for the purpose of profit or employment; as, his business was that of a merchant; the business of a banker.

(7) ''Serious engagement, important occupation, as distinguished from trivial affairs.''

And for further light, we are referred to 9 C. J. 1103, where it is said:

''That which business, or that which occupies the time, attention or labor of one as his principal concern, whether for a longer or shorter time; that which engages the time, attention or labor as a principal, serious concern or interest; that which busies or occupies one's time, attention and labor as his chief concern; occupation; calling.'' The same authority also cites Bennett v. Hebbard, 74 N. H. 411, where it is said: ''Business is a word in common use to describe every occupation in which men engage'' It is urged the word ''business'' has been given a meaning broad enough to include the activities of court procedure, and the following sections of the Missouri Statutes, Revised Statutes 1919, are cited:

Section 2542, Revised Statutes 1919, referring to the probate court, says: ''Said court shall have jurisdiction over all matters pertaining to probate business.''

Section 2553 repeats the expression ''probate business.''

Section 2562 refers to the transaction of ''municipal business.''

Section 2581, referring to the county courts, says: ''The president or any two judges of the county court may order a special term whenever the business and interest of the county may require it.''

Section 2583 gives the court authority to hold adjourned terms "for the transaction of its business."

Section 2587 makes of a majority of the judges a quorum "to do business."

Section 2620, referring to the circuit court of St. Louis, provides: "Said court may classify, arrange, distribute and assign the busin⌃ ⌃ thereof."

Sections 2676, 2680 and 2685 refer to the "business" of the criminal court of Jackson county.

Section 2938 requires the county court to provide proper offices for said justice courts and for the proper care of the same and shall provide light, heat, proper books of account and printed forms of writs and stationery, and whatever else may be deemed necessary by the county court of said county for the "proper conduct of the business of such courts."

Thus plaintiff argues that the use of the room in question is covered by the inhibition in section 2 of the agreement.

It is defendants' position that the chancellor properly interpreted the language in question "no other business . . . except a restaurant" in its restricted sense and that it means only the transaction of business as defined in Black's Law Dict., p. 158, viz.,

"That which occupies the time, attention and labor of men for the purpose of livelihood or profit."

We are not inclined to view with favor the restricted interpretation placed on the word "business" by the chancellor in connection with the facts before us. This court held in Land Company v. Investment Co., 169 Mo. App. 715, l. c. 722:

"When covenants in the nature of restrictions upon the fee are reasonable and within the policy of the law, they are valid. [Citing authority.] When clearly expressed, covenants of this description will be strictly enforced and a court of equity will decree an injunction. [Citing authority.] The intention of the parties must be determined from the language of the covenant itself, considered in connection with the surrounding circumstances at the time the covenant was made (Ibid.); or, as it is sometimes said, from the language of the covenant itself considered in the light of the entire context of the instrument containing it. [Citing authority.] Such covenants must be considered with reference to the situation of the property affected and its present and prospective use as well as to the language employed in expressing the covenant. [St. Louis Bank v. Kennett, 101 Mo. App. 370, l. c. 388.] And where the covenants are in reality an express contract that a certain status shall not be altered, the essential fact is the breach rather than the injury. If parties settle their rights in regard to a parcel of land by covenants, these must be observed whether their nonobservance will inflict injury or not. A plaintiff may restrain a continuous breach which is beneficial to

him and may stand on the very letter of his obligation, for a party may not make a solemn engagement and then disregard it on the ground that no harm will result. [Citing cases.]''

In arriving at the intention of the parties we must look at the covenant itself and consider it in connection with the surrounding circumstances at the time the covenant was made, or ''from the language of the covenant itself considered in the light of the entire context.'' Let us therefore consider the language of section 2 of the agreement. Taken alone, the first sentence of the section might be subject to the strict interpretation placed on it by the chancellor; but, when we consider the remainder of the section, to-wit, ''pending occupancy by tenant who is both satisfactory to the lessee and lessor, party of the first part agrees to give party of the second part the privilege of using said room for kitchen and dining room privileges for his family''—there is further light thrown on the situation. By every reasonable intendment, it must be concluded that the room was to be used for kitchen and dining room purposes. Furthermore, plaintiff testified that the room communicating with the lobby could be used only as a dining room to the advantage of the hotel and that any other use of the room would result in loss of guests.

The rule in construing contracts is that the surrounding circumstances must be taken into consideration. [Printing Company v. Cutlery Co., 143 Mo. App. 518, 522; 127 S. W. 666; Hardware Co. v. Zinc Co., 153 Mo. App. 387, 393, 134 S. W. 35.] In Donovan v. Boeck, 217 Mo. 70, 87, 116 S. W. 543, the supreme court said:

''But one main rule is common to the construction of all contracts and to it all others must give way. That rule is to get at the meaning of the contract and its true intendment as judicially gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter and the ordinary meaning of the language of the contract, pass in review.''

And in Thompson v. Lindsay, 242 Mo. 53, 72, 145 S. W. 472, it is said:

''The construction of a contract arises on the whole subject-matter —parties, their relations to each other, the object to be subserved by the contract, and the language all considered.''

In applying this rule of construction to the covenant and gathering the obvious intent of the parties, we are of opinion the chancellor erred in applying a restricted meaning to the language employed by the parties.

Defendants raise the point that the justice of the peace long ago had removed from the premises in question and that the injunction prayed could serve no useful purpose if granted. Counsel are not agreed on the point as to whether or not the justice has vacated the

room, there is no testimony on the question and we are not in position to rule on it and shall not do so.

Defendants urge the appeal should be dismissed because the record discloses that upon the action of the chancellor indicating the demurrer to the evidence would be sustained and plaintiff's counsel permitted to take a nonsuit with leave to move to set the same aside, counsel took a nonsuit and thus closed his case; that the record discloses that thereafter, on the same day, the court, after hearing the evidence sustained the demurrer; that thereupon plaintiff took an involuntary nonsuit with leave, after which the court rendered judgment in favor of defendants. From this it is argued that after the last-mentioned entries were made of record, the cause no longer was pending and the appeal should therefore be dismissed.

Counsel for plaintiff meets this situation by stating that the colloquy indulged in between the court and plaintiff's counsel was preliminary to the judgment immediately following; that the court invited the involuntary nonsuit and plaintiff's counsel excepted and used language in the future tense, saying "I will take an involuntary nonsuit." And thereafter followed the ruling of the court in sustaining the demurrer, the exception to the ruling, and the taking of the involuntary nonsuit. It is urged the stenographer's notes "case closed" merely means that the parties had rested. As the record supports plaintiff on this point, we rule defendants are not entitled to have the appeal dismissed. For the reasons herein stated, the judgment and decree should be reversed and the cause remanded. *Bland, J.*, concurs; *Trimble, P. J.*, absent.