# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## NOVEMBER SESSION, 1880.

[No. 7,344.—Department One.]

## JOSHUA HENDY v. F. M. DINKERHOFF.

FIXTURES — PERSONAL PROPERTY—REALTY. — Personal property annexed to realty still retains its character as such, if the parties so intended in annexing it, unless it has become so absorbed or merged into the realty that its identity as personal property is lost, as where it cannot be removed without practically destroying it, or where it is essential to the support of that to which it is attached.

ID.—ID.—ID.—ID.—L. was in possession of land under a contract to purchase from the defendant; the contract providing, that if L. failed to perform its terms, then all tools and machinery put upon the land by L. should be the property of the defendant. The plaintiff leased an engine and boiler to L., with a privilege of purchase. The plaintiff knew that the chattels were to be affixed to said land, but did not know of the terms of said contract. L. affixed the chattels to the realty so that they could not be removed without destroying the masonry and wall to which the chattels were affixed. L. failed to complete his purchase of the land, and forfeited the lease of the chattels. *Held*, as against the defendant, that the chattels remained the personal property of the plaintiff.

APPEAL from a judgment for the defendant, in the Superior Court of the County of El Dorado. WILLIAMS, J.

*George G. Blanchard*, for Appellant.

Whether property once personal becomes realty or a fixture, depends upon the combined act and intent of the owner. It has

been held, that one claiming under a party who has previously mortgaged the property as a chattel cannot assert a title to it against the mortgagee as real estate, nor dispute the mortgagor's title. (*Smith* v. *Benson*, 1 Hill, 176.)

When personalty is tortiously affixed to land, the conveyance of the land does not convey the chattels so attached. (*Ford* v. *Cobb*, 20 N. Y. 350 ; *Mott* v. *Palmer*, 1 Comst. 564 ; *Godard* v. *Gould*, 14 Barb. 662 ; *Russell* v. *Richards*, 10 Man. R. 429 ; Hilliard on Real Property, ch. 1, §§ 18–28 ; *Sheldon* v. *Edwards*, 35 N. Y. 279.)

*G. J. Carpenter*, for Respondent.

The plaintiff knew the purpose for which the engine and boiler were to be used by Lampson; and he is presumed to have contemplated and intended the legal consequences. The respondents had no notice or knowledge of the lease between appellant and Lampson until after the latter had abandoned, and they had entered into possession of, the mine and fixtures. The reversionary title of respondents, therefore, was not subject to the unrecorded lease between their tenant Lampson and appellant.

Lampson had no agreement with respondents permitting him to sever or remove the property in question either before or after the expiration of his term. He did have an agreement with them, that in case of his failure to purchase the mine and mill, the machinery and improvements put upon the mine should revert with it to respondents.

Taken and considered together, the findings show that appellant's remedy is by action against his lessee, and that respondents cannot be charged with such notice, actual or constructive, of his lease as can in any way affect their title to the property in dispute, whether acquired by change in its character or possession, or by agreement, or by operation of law.

Upon the findings of the Court below, that the property in dispute was permanently affixed, for mining purposes, to the quartz mill and mine of respondents, it was properly held to be a part of the realty. (Civ. Code, §§ 658, 660, 661, and notes in annotated edition ; Civ. Code, §§ 1013, 1019 ; *Hunt* v. *Bay State Iron Company*, 97 Mass. 279 ; Vide same case in Albany Law Journal, p. 515, Dec. 27th, 1879, and cases there cited, as

follows: *Thompson* v. *Vinton*, 121 Mass. 139; *McLauglin* v. *Nash*, 14 Allen, 136; *Pierce* v. *George*, 108 Mass. 78; *Mc Connell* v. *Blood*, 123 Mass. 47.)

ROSS, J.:

This is an action to recover the possession of a certain steam engine and boiler, or their value. The case comes up on the judgment roll, and from the findings it appears, that on the 19th of July, 1877, the plaintiff, being the owner, leased the property to one Lampson, for the period of two months from the 1st of August, 1877, the latter to pay for its use $283.25 on the 1st day of September, and a like sum on the 1st day of October, 1877, with the right on the part of Lampson to purchase the property from the plaintiff for one dollar, in the event he should keep all the covenants of the lease, but " until then, he should have no right, claim, or interest in or to said property, except as lessee, and subject to the conditions of said lease." Among the covenants of the lease, was one to the effect, that, in the event the lessee should fail to keep any of them, the plaintiff should thereupon have the right to retake the property. At the time of making the lease, the plaintiff knew that the engine and boiler were to be used by Lampson in working a mine situated about two miles from Diamond Springs, in El Dorado County. Situated upon this mine was a quartz mill, which, together with the mine, belonged to defendants. Prior to the making of the lease between the plaintiff and Lampson, the latter had entered into an agreement with the defendants, looking to the purchase by him of the mill and mine, by the terms of which agreement Lampson was to take possession of the mill and mine, and was to sink a shaft on the latter, after doing which, and within a given period of time, he had the privilege of buying the mill and mine from defendants at a certain price. The contract also provided, that any and all machinery and tools put upon or used in the mill or mine should, in the event Lampson failed to purchase, become the property of the defendants. In accordance with this agreement, Lampson, in August, 1877, took possession of the mill and mine, and thereafter placed the engine and boiler leased to him by the plaintiff in the mill, and proceeded to work and

operate the mill and mine for about ten days, at and after which time he "abandoned and left said mill, mine, and property, and abandoned his contract with defendants, and thereafter made no claim to hold, retain, work, or operate said mill or mine, and abandoned all claim to purchase the same from defendants under said contract." In November, 1877, the defendants took possession of the mill and mine, including the engine and boiler, and have ever since retained possession thereof.

At the time of making the lease, the plaintiff did not know of any agreement between Lampson and the defendants, and the latter never knew, until after their possession in November, 1877, of the existence of the lease between plaintiff and Lampson. The engine and boiler were attached and affixed to the mill by Lampson, "by means of iron bolts, timbers, and masonry, in such a manner to become permanently affixed to the mill, and could not be removed without destroying the masonry and stone wall, and greatly damaging some of the timbers of the mill," which latter (the mill) was permanently fixed and attached to the mine. After demand made, the defendants refused to deliver plaintiff the engine and boiler; hence the present action to recover them.

It is well settled, as said by the Court of Appeals of New York, in *Tifft* v. *Horton*, 53 N. Y. 380, "that chattels may be annexed to the real estate and still retain their character as personal property. (See *Voorhees* v. *McGinnis*, 48 N. Y. 278, and cases there cited.) Of the various circumstances which may determine whether in any case this character is or is not retained, the intention with which they are annexed is one; and if the intention is that they shall not by annexation become a part of the freehold, as a general rule they will not. The limitation to this is where the subject or mode of annexation is such as that the attributes of personal property cannot be predicated of the thing in controversy (*Ford* v. *Cobb*, 20 N. Y. 344), as when the property could not be removed without practically destroying it, or where it or part of it is essential to the support of that to which it is attached." (*Ford* v. *Cobb*, 20 N. Y. 344.)

In the present case, there can be no doubt that, as between

the plaintiff and *Lampson*, the engine and boiler remained personal property, notwithstanding the fact that it was by him attached to the mill; for, as said in *Ford* v. *Cobb*, 20 N. Y. 352: "They were not so absorbed or merged in the realty that their identity as personal chattels was lost; and unless such an effect has been produced, there is no reason in law or justice for refusing to give effect to the agreement by which they were to retain their original character." (See also *Eaves* v. *Estes*, 10 Kan. 314; *Pierce* v. *Emery*, 32 N. H. 484; *Haven* v. *Emery*, 33 N. H. 66; *Curtis* v. *Riddle*, 7 Allen, 185.)

The question remains, Can they be so regarded in the hands of the defendants? How this would be if the latter occupied the position of *bona fide* purchasers, without notice, of the real estate to which the chattels were attached, need not be determined, for they are not in that position. They were all the time the owners of the property to which the engine and boiler were attached; and as such owners, placed Lampson in possession of the mill and mine, with authority to work them, and under an agreement on his part to purchase, and with a stipulation that, in the event he failed to do so, "any and all machinery and tools put upon or used in said mill or mine" should become the property of the defendants. Under these circumstances, the latter must be held to stand in the shoes of Lampson, and the property in question treated as personalty in their hands as in his. (*Smith* v. *Benson*, 1 Hill, 176; *Tifft* v. *Horton*, 53 N. Y. 377; *March* v. *McKoy*, 56 Cal. 85.)

Judgment reversed, and cause remanded, with directions to the Court below to enter judgment for the plaintiff on the findings.

MCKINSTRY, J., and MORRISON, C. J., concurred.