[Sac. No. 1408.   In Bank.—August 31, 1906.]

# WESTERN UNION TELEGRAPH COMPANY, Appellant, v. MODESTO IRRIGATION COMPANY et al., Respondents.

IRRIGATION DISTRICT—TAXATION—TELEGRAPH LINE ON RAILROAD RIGHT OF WAY.—For the purposes of the revenue of an irrigation district it can only tax real property situated within the district; and poles, wires, and other appliances constituting a telegraph line passing through the district, belonging to a telegraph company, though situated upon the right of way of a railroad company, with its permission, preserve the character of personal property, and, as such, cannot be taxed by the irrigation district.

ID.—DEFINITION OF PROPERTY IN GENERAL REVENUE ACT.—For the purposes of taxation in an irrigation district the definition of real and personal property in the general revenue and taxation laws of the state must prevail; and under sections 3617 and 3663 of the Political Code, telegraph lines cannot be assessed as improvements on land, but must be assessed as personal property.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Brown & Wells, R. B. Carpenter, and Alexander H. Van Cott, for Appellant.

Dennett & Walthal, for Respondents.

McFARLAND, J.—The plaintiff is a well-known corporation, organized under the laws of the state of New York, engaged in the business of telegraphy, having certain franchises, rights, and privileges granted by the government of the United States, and having many telegraph lines in California and in other parts of the United States and adjoining countries. The defendant, the Modesto Irrigation Company, is an irrigation district organized in July, 1887, under an act of the legislature of this state providing for the organization of irrigation districts, approved March 7, 1887, (Stats. 1887, p. 29,) and generally known as the Wright Act, and it has ever since continued its existence as such district under said acts

and acts amendatory thereof and supplemental thereto.   The
other defendants are directors of said irrigation district.   The
plaintiff is, and at the times mentioned in the complaint was,
the owner of certain property consisting of poles, wires, and
other appliances constituting nine and one half miles of one
of its telegraph lines which runs over a right of way of a
certain railroad corporation known as the Southern Pacific
Company within the boundaries of the said Modesto Irrigation
District.   The plaintiff put up its said nine and one half miles
of poles, wires, etc., under a written contract with the said
railroad which expressly declared that the poles, wires, etc.,
constituting said nine and one half miles of telegraph line,
"shall be and remain the personal property of said plaintiff."
In 1904 the defendants caused the said nine and one half
miles of poles, etc., to be assessed at the value of eleven hun-
dred dollars as property taxable for the purpose of raising
revenue for said irrigation district.   Thereupon the plaintiff
brought this suit to have determined the validity of said
assessment—as it was authorized to do by section 69 of an
act to provide for the organization of irrigation districts, ap-
proved March 31, 1897, (Stats. 1897, p. 276,) and generally
known as the Bridgford Act.   The case was tried without
a jury and upon a stipulated state of facts, and the court
rendered judgment for defendants.   From this judgment
plaintiff appeals.   There is no contest as to the facts in the
case, which are substantially as above stated; the only ques-
tion is whether the said property of plaintiff is legally as-
sessable and taxable by the irrigation district.

The main purpose of the statutes providing for irrigation
districts is to enable owners of land that may be made more
productive of vegetable growth by irrigation, and which are
"susceptible of irrigation from a common source," to organize
so as to more effectually accomplish such irrigation; and
there is, therefore, some room for the alleged absurdity of
irrigating the poles and wires of a telegraph line.   But
we will assume that such property is within the taxing
power of the district if the letter of the law necessarily in-
cludes it.

The statute under which the defendant was organized pro-
vides that for the purpose of revenue the assessor must assess
"all of the real property within the district" (Stats. 1887,

p. 37, sec. 18) ; and it is conceded, or at least it is the law, that no personal property can be subjected to taxation for such purpose. Said section provides that the assessor must prepare an assessment-book with headings in which must be listed "all such property"—that is, all real property. One of the headings is "land by township, range," etc., or "by metes and bounds or other sufficient description," and "the improvements thereon"; another is "city and town lots . . . with the improvements thereon"; under another heading there must be stated the cash value of the improvements on the land whether city land or other lands, and also "the cash value of the improvements of the real estate assessed to persons other than the owners of the real estate." However, in providing for the enforcement of the payment of taxes the statute seems to refer to *land alone;* as, for instance, by section 26, in the case of delinquency the collector must add certain penalties to "each lot, tract, or piece of land," and in the event of sale for delinquency he must commence the sale at the head of the list of property and continue the sale in the numerical order of "the lots, or blocks"; and by section 27 he must sell to the person who will take "the least quantity of the land" and he must give to the purchaser a certificate containing a "description of the land sold"; and by section 30 it is provided that if no redemption be made the collector must make a deed to the purchaser which shall convey to him the absolute title "to the land described therein." (These provisions are substantially the same as those contained upon the same subjects in the Bridgford Act.) It is therefore doubtful whether it is the intent of the law to enforce any tax upon mere "improvements," except as a part of the land improved, and whether the cash value of the improvements is not required merely to show the value of the land as enhanced by the improvements; and it is doubtful if the sale for delinquency of "an improvement," as distinct from the land, is contemplated. Plaintiff also contends that the right of way of the railroad company is not real property within the meaning of the statutes here relied on, and further that even if it were the poles, wires, etc., are not an "improvement," but really a burden. We notice these points because they are urged, but we do not think it necessary to pass upon them definitely, because we think that the poles, wires, etc.,

are not assessable for the reason that they are not real property but only personal property.

There is no doubt that articles of personal property owned by one person may be attached to land owned by another without becoming a part of the realty and without losing their character as personal property. For instance, trade fixtures annexed to land by tenants do not become part of the freehold even without any special agreement. And the general rule is that the intention of the parties determines the character of the annexed chattels and that they remain personal property if that be the intention of the parties when they are attached. This rule applies to third parties acquiring an interest in the land—as mortgagees, grantees, etc.,—except where the mode of annexation is such that the attached property loses its character as personal property—as where it could not be removed without destroying it, or where it is necessary to the support or safety of that to which it is attached. In *Hendy* v. *Dinkerhoff,* 57 Cal. 3, [40 Am. Rep. 107], the court say: "It is well settled, as said by the court of appeals of New York, in *Tifft* v. *Horton,* 53 N. Y. 380, [13 Am. Rep. 537], 'that chattels may be annexed to the real estate and still retain their character as personal property.' (See *Voorhees* v. *McGinnis,* 48 N. Y. 278, and cases there cited.) Of the various circumstances which may determine whether in any case this character is or is not retained, the intention with which they are annexed is one; and if the intention is that they shall not by annexation become a part of the freehold, as a general rule they will not. The limitation to this is where the subject or mode of annexation is such that the attributes of personal property cannot be predicated of the thing in controversy, (*Ford* v. *Cobb,* 20 N. Y. 344), as when the property could not be removed without practically destroying it, or where it or part of it is essential to the support of that to which it is attached." (See, also, *Tifft* v. *Horton,* 53 N. Y. 380, [13 Am. Rep. 537]; *Memphis etc.* v. *State,* 6 Cold. (Tenn.) 311, [98 Am. Dec. 452]; *Chelsea Water Works* v. *Bowley,* 17 Q. B. 359; and *Wiggins* v. *Ohio,* 142 U. S. 415, [12 Sup. Ct. 188].) In the case at bar the poles, wires, etc., were easily removable, and are in no sense essential to the support of that to which they are attached. We think therefore that they are not real property within the meaning

of the Irrigation Law but are personal property not assessable for the revenue purposes of the district.

2. Moreover, we think that, for the purpose of the revenue to the district, the definitions of real property and personal property in the general revenue and taxation laws of the state, as found in the Political Code, must prevail. They relate to the same subject as the revenue part of the law covering irrigation districts. Indeed, it is expressly provided in section 39 of the Bridgford Act (Stats. 1898, p. 267) that "in case of the neglect or refusal of the board of directors to cause such assessments and levies to be made, as in this act provided, then the assessment of property made by the county assessor and state board of equalization shall be adopted, and it shall be the basis of assessment for the district." Now, in section 3617 of the Political Code real estate is defined, for taxable purposes, as land including various kinds of interests therein, and "improvements," and it is declared that "The term 'improvements' includes: (1) All buildings, structures, fixtures, fences, and improvements erected upon or affixed to land, except telephone and telegraph lines"; and in section 3663 of said code it is provided that telegraph and telephone lines shall be "assessed as personal property by the assessor of the county." Considering these provisions of the general law touching assessment and taxation, we do not think that the respondent is in a position to ignore the character of personal property given to the poles, wires, etc., of appellant by the contract between it and the railroad company on whose right of way they were placed.

The judgment appealed from is reversed, and the superior court is directed to render judgment for plaintiff as prayed for in its complaint.

Shaw, J., and Henhsaw, J., concurred.

Sloss, J., and Angellotti, J., concurred on the ground last stated.

BEATTY, C. J.—It has been assumed by both parties to this action and by the court that it is authorized by the terms of the Bridgford Act. I think it more than doubtful whether the provisions of sections 68 and 69 of that act were ever in-

tended, or can be construed to authorize an action to determine the validity of the assessment of particular property to an individual taxpayer. But waiving that question, I concur in the judgment, and in the opinion as to the matters discussed.