[S. F. No. 6833. In Bank.—March 20, 1917.].

REALTY DOCK AND IMPROVEMENT CORPORATION (a Corporation), Appellant, v. ALDEN ANDERSON et al., Respondents.

LANDLORD AND TENANT—IMPROVEMENTS BY LESSEE—SAFE DEPOSIT VAULT—CONSTRUCTION OF LEASE.—A massive safe deposit vault, covering a floor space of twenty by thirty feet, with walls eight feet high, made of solid brick two feet thick set in cement and mortar and having a steel beam roof, sheathed inside and out .with steel sheeting screwed in place, and having a steel door and vestibule, which was erected by a lessee at a cost of three thousand dollars on the floor of the basement of a portion of a building leased for banking purposes, is an "alteration, addition, and improvement" to the premises leased, within the meaning of a clause of the lease providing that all such alterations, additions, or improvements made by the lessee should be the property of the lessor and should . remain upon and be surrendered with the premises.

ID.—TRADE FIXTURES.—It is immaterial to the right of the lessor to the vault, under such provision of the lease, that it was simply a trade fixture and its removal could be effected without injury to the premises.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Edgar C. Chapman, for Appellant.

Gillett & Cutler, F. R. Sweasey, and F. A. Cutler, for Respondents.

LORIGAN, J.—In June, 1908, the Union State Bank, a banking corporation, leased and went into the occupancy of a portion of the Monadnock building in San Francisco, under a ten-year lease from Herbert C. Law, its owner. In October, 1908, Law sold the property and assigned his interest in the lease given to him by the Union State Bank to the plaintiff. In July, 1909, the defendant, Alden Anderson, as superintendent of banks of this state, declared the Union State Bank to be insolvent, took charge of its property, business,

and banking premises, and with the assistance of his code-fendant—S. P. Young, his deputy—removed all the personal property of the bank from the building as expeditiously as possible, at that time, among other things, removing, over the protest of the plaintiff, a steel door and the exterior and interior steel plate linings of a large safe deposit vault which, under the terms of its lease, the bank had constructed in the basement of the leased banking premises.

Plaintiff brought this action to recover damages from the defendants for the removal of said steel door and said exterior and interior steel lining of said vault, which it alleged were wrongfully removed. The court made findings and entered a judgment in favor of defendants, from which, and a denial of its motion for a new trial, plaintiff appeals.

The court found that by the terms of the lease made between the plaintiff and the Union State Bank, the bank was leased a certain amount of space on the ground floor of the Monadnock building for ordinary banking business, and also a large room in the basement immediately below the ground floor space; said basement-room to be used for safe deposit vaults to be constructed in said basement for the customers of the bank; that the premises leased should not be used "for any other purposes than that of banking and safe deposit business without the written consent of the lessor." The lease further provided "that said premises should not be altered, repaired, or changed without the written consent of the lessor, and that unless otherwise provided by written agreement all alterations, improvements, and changes should be done either by or under the direction of the lessor but at the cost of the said lessee; that all alterations, additions, and improvements made in and to said premises, should, unless otherwise provided by a written agreement, be the property of the lessor and should remain upon and be surrendered with the premises."

As to the construction of the brick vault: The court found that the bank upon entering into possession of the premises constructed a safe deposit vault in said basement; that said vault rested on the floor of said basement, and was not connected with the walls of the basement or with the ceiling, and was approximately twenty feet wide by thirty feet long and between eight and nine feet high. The walls of said vault were two feet thick, made of brick and lined inside and

out with sheets of steel. The vault was provided with a steel door and steel paneling surrounding the door. Within this vault the said Union State Bank placed safe deposit boxes for the use of its customers; that neither said vault, door, or paneling in it was imbedded or affixed to said building owned by plaintiff; nor attached or affixed to its walls or connected therewith, and formed no integral part of said building and was not placed in the basement of said building or in said building as an "alteration, addition, or improvement" thereto, but was placed there for the purpose of trade as aforesaid, and not otherwise, and the same could be removed from said building and from said basement without causing any injury or damage thereto.

These matters are taken from the findings. But in addition to said findings, and showing more in detail all about the construction of said vault and the removal thereof, the following undisputed facts taken from the record are referred to: The safe deposit vault was constructed by the bank under the provisions of the lease, and as an essential aid to the proper conduct of its banking business, and was of such substantial character and strength and permanency of construction as to render safe and secure protection for the valuables of the depositors and of sufficient size to be convenient and commodious for them. This vault was built in a corner of the basement-room, and one side and one end were set against said basement walls. These were not connected by cement or mortar with such basement walls, but were built up against and parallel therewith. The vault-room was built up from the floor of said basement to the width, breadth, and height as found by the court. The walls were two feet thick, built of brick; they were constructed from the cement floor of the basement, the brick being laid on the basement floor and affixed thereto by means of mortar mixed with cement. The roof of the vault did not reach the ceiling of the basement but was constructed of nine-inch I-steel beams, eighteen feet long, laid close together across the vault walls and filled in with brick and cement. The reasonable cost of the construction of the vault brickwork was eight hundred dollars. The vault was lined inside and out with burnished steel casing, the outer steel casing being placed there solely for ornamental purposes. The steel of the ceiling of the vault was secured to the steel beams entering into its construction, and the

inner and outside steel linings were screwed to the brick walls of the vault. The steel door and vestibule (one piece) was set in mortar and secured by flanges to the vault walls to hold it in place. This door and the inner and outer linings of the vault were of the reasonable value of $2,550. The defendants in dismantling the vault unscrewed the steel linings, inner and outer, from the walls of the ceiling, and broke away the plaster from around the steel door and vestibule and took them out. The taking out of the door left the brick walls about the door somewhat jagged and ragged on one side, but otherwise the brickwork of the walls was not injured. No attempt was made to remove any of the walls or ceilings of the vault save as we have indicated. In fact, the only portions taken were the door and vestibule and the inner and exterior steel linings. Otherwise the vault-room was left intact. As to the vault-room itself, as originally constructed and equipped and used by the bank, it was provided with safe deposit boxes on three sides, and with chairs, tables, and other accommodations for the patrons of the safe deposit department. When these defendants dismantled the vault in the manner described, and took away the property in question, they did so by breaking the sidewalk in front of the building and taking it out through the opening so made. This was the only way in which the articles could be removed.

It is insisted by the appellant that the finding of the trial court that neither the vault, nor door, nor panelings, when constructed, were affixed to the building owned by plaintiff and formed no integral part of the building leased, and were not placed in the basement of said building, or in said building, as an ''alteration, addition, or improvement'' thereto, is not sustained by the evidence. While this finding, as a whole, embraces several particular findings, we do not think it necessary to consider the attack of appellant upon all of them, because we are satisfied that its contention is correct as to the particular finding that this vault was not placed in said building as an ''alteration, addition, or improvement'' thereto, and it is upon the fact as to whether the construction of the vault did, or did not, constitute an ''alteration, addition or improvement'' to the building, that the rights of the parties in this action are to be determined.

The theory of the respondents appears to be, and was doubtless that adopted by the trial court, that the construction of this vault in the manner and style described in the evidence constituted it simply a trade fixture which, under section 1019 of the Civil Code, the tenant had a right to remove at any time before the termination of his lease if the removal could be effected without injury to the premises, unless the thing had by the manner in which it was affixed become an integral part of the premises. We do not think, however, as we have just said, that the finding of the court, in as far as it determines that the vault is a trade fixture and that it could be removed from the building without causing any injury thereto, is of any consequence. Nor do we think it of any moment in the consideration of this appeal whether the vault was imbedded in or affixed to the main building and had become an integral part thereof, except in so far as these matters may bear on what we consider the determinative question in the case, namely, whether its construction constituted an "alteration, addition, or improvement" in the premises which, under the terms of the lease, inured to the lessor. It is not a matter of controlling importance whether the vault as constructed was a permanent or a movable fixture. We are not here considering the rights arising by operation of law only between landlord and tenant as to the articles placed upon the leased premises by the latter. On the contrary, these rights are to be determined from the terms of the lease under which the parties undertook to fix them. The lease provided that no "alterations, repairs, or changes" should be made by the tenant except with the consent of the lessor and that as to them, provided that all "alterations, additions, and improvements" should be the property of the lessor. This vault was built under the terms of the lease and with the consent of the lessor. Hence, the only question is, Did this construction of the vault result in an "alteration, addition, or improvement" to the premises leased? If it did not, the defendants as representing the lessee, had a right to remove it as they did. If it did, then it belonged to the plaintiff and the defendants had no right to interfere with it. It appears to us as assuming rather an idle task if we were to discuss at length the question whether the character of this vault built by the bank did or did not constitute "an alteration, addition, and improvement" in the premises. It is, of

course, quite apparent that the term "improvement" is comprehensive enough to embrace all additions or alterations which may be made by a tenant for the convenience of his business upon the premises. It is much more comprehensive than the word "fixture," and while including these, includes also many things that may not be classed as fixtures. In fact, if force is to be given to a provision in a lease which provides that all "improvements" made in premises shall inure to the lessor, it is difficult to conceive of any subsequent addition, alteration, or repair to the premises during the tenancy which would not be embraced within the term "improvement." That the construction of this vault was intended to and did amount to all of these—an addition, alteration, and improvement—and was embraced within the terms of the lease we think is evident. Certainly, a room covering a floor space of twenty feet wide by thirty feet long, with walls eight feet high, made of solid brick two feet thick set in cement and mortar and having a steel beam roof, sheathing inside and out with steel sheeting screwed in place; having a steel door and vestibule and the whole erected and adapted as a safety vault at an expense of over three thousand dollars, is in the nature of things an alteration in the premises on which it is built; and in its solidity, permanency, and utility, is certainly an addition and improvement to the premises. It certainly altered the basement of the premises to build it there, and was an addition and improvement in aid of the use of the premises for banking purposes for which they were rented, and in aid of which use the building of the vault was contemplated and accomplished. This safety vault was not like an ordinary movable safe, or a machine which might be temporarily housed in or which is constructed or fixed together in parts readily separable so as to permit of removal and reassembling at some other place. This vault as constructed had no removable identity. It lost its character as a safety vault as soon as it was taken apart. With the removal of the steel casings and the door the structure remained but brick and mortar which, as one of the defendants testified, was of no use or value to the lessee and in its then condition it could not be of particular value to the lessor. That as constructed in the manner and form described in the evidence it did constitute an "alteration, addition, and improvement" which passed to the owner

of the leased premises when it was made, is sustained by the authorities. (*French* v. *Mayor etc. of New York*, 29 Barb. (N. Y.) 363; *Parker* v. *Wulstein*, 48 N. J. Eq. 94, [21 Atl. 623]; *Merritt* v. *Judd*, 14 Cal. 59; *Harris* v. *Kelly* (Pa.), 13 Atl. 523; *Wright* v. *La May*, 155 Mich. 119, [118 N. W. 964]; *In re Bahl's Ice Cream & Baking Co.*, 195 Fed. 986; *Levin* v. *Improved Property Holding Co.*, 141 App. Div. 106, [125 N. Y. Supp. 963].) In the French case, *supra*, the court said: "The question in this case is not what are fixtures which a tenant is at liberty to remove on the expiration of his lease —but what did the lessees covenant with the lessors they would surrender and suffer to remain on the demised premises on the termination of the lease?

"The covenants of the lease are that on the last day of the term the lessees will surrender the demised premises, 'and all the improvements that may have been placed thereon by the said parties of the second part (the lessees) and which improvements are to belong to said parties of the first part (the lessors) and all of which are to be surrendered up in as good a state and condition as reasonable use and wear thereof will permit, damages by the elements excepted.' . . .

"The covenant is to surrender all the improvements that have been placed thereon. Improvements, clearly, in the lease, here used embrace every addition, alteration, erection or annexation made by the lessees during the demised terms to render the premises more available and profitable, or useful and convenient to them. It is a more comprehensive word than 'fixtures' and necessarily includes it, and such additions as the law might not regard as fixtures. It would be difficult to select a more comprehensive word, and where the parties say all which may be placed upon the premises shall belong to the lessors it is difficult to say what, if anything, would be excluded."

While the other authorities cited are to the same effect, attention is specially directed to *Parker* v. *Wulstein*, 48 N. J. Eq. 94, [21 Atl. 623], for a more particular discussion of the subject.

The judgment and order appealed from are reversed.

Melvin, J., Henshaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.

SHAW, J., Dissenting.—I dissent.

Under the terms of the lease, and upon the facts as stated by Justice Lorigan, I am of the opinion that the safe deposit vaults, having been put in the basement solely to facilitate the banking business carried on by the tenant in the leased premises, and not forming any part of the premises leased, should not be deemed to be a part of the premises, or an "improvement" thereto within the meaning of the clause that all "improvements made in and to said premises" should go to the lessor. That clause should be held to refer to improvements to the premises as leased, not to a trade structure in no way affixed, except that it was set upon the floor of the basement. Neither the fact that it was not all removed, nor the fact that it was a massive structure, alters its character in law.