[Civ. No. 10005. First Appellate District, Division Two.—February 11, 1936.]

JAMESON PETROLEUM COMPANY (a Corporation), Appellant, v. STATE OF CALIFORNIA et al., Respondents.

Black, Hammack & McWilliams and Alfred L. Black, Jr., for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondents.

STURTEVANT, J.—This is an action to recover taxes which it is alleged were illegally assessed for the year 1931 and paid under protest. The trial court sustained the demurrer of the defendants to the plaintiff's amended complaint. The plaintiff declined to amend and judgment was entered against it. From that judgment the plaintiff has appealed.

As stated by the plaintiff on the first page of its opening brief, the only issue involved is that of law as to whether or not oil leases and mineral rights are real property when considered in the light of section 16 of article XIII of the Constitution, the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, as amended), and sections 3617 and 3820 of the Political Code.

Except certain exempted properties (not involved in this action) all property, real, personal and mixed, and capable of private ownership is taxable. (Const., art. XIII, sec. 1.) Franchises of every kind and nature are taxable. (Subd. d, sec. 14.) After enumerating certain specific franchises not involved in this litigation, subdivision (d) of section 14 of article XIII of the Constitution provides: "All franchises, other than those expressly provided for in this section, shall be assessed at their actual cash value, in the manner provided by law, and shall be taxed at the rate of one per centum each year, and the taxes collected thereon shall be exclusively for the benefit of the state." In 1928 section 16 was added to said article. Among other things, it provides: "Sec. 16. Taxation of banks, franchises, etc. Notwithstanding any other provision of this Constitution: . . . 2. (a) All financial, mercantile, manufacturing and business corporations doing business within the limits of this state, subject to be taxed pursuant to subdivision (d) of section 14 of this article, in lieu of the tax thereby provided for, shall annually pay to the state for the privilege of exercising their corporate franchises within the state a tax according to or measured by their net income. The amount of such state tax shall be equivalent to four per cent of their net income. Such tax shall be subject to offset, in a manner to be prescribed by law, in the amount of personal property taxes paid by such corporations to the state or political subdivisions thereof, but the offset shall not exceed ninety per cent of such state tax. . . . 3. The legislature, two-thirds of all of the members elected to each of two houses voting in favor thereof, may change by law the rates of tax, or the percentage, amount or nature of offset provided for in paragraphs 1 and 2 hereof." The next legislature that met after the adoption of section 16 of article XIII of the Constitution enacted the statute known as Bank and Corporation Franchise Tax Act, Statutes of 1929, page 19. Among other things, section 4 thereof provides as follows: "Sec. 4. Every financial, mercantile, manufacturing and business corporation doing business within the limits of this state, of the classes referred to in subdivision 2 (a) of section 16 of article XIII of the Constitution of this state, shall annually pay to the state, for the privilege of exercising its corporate

franchises within this state, a tax according to or measured by its net income, to be computed, in the manner hereinafter provided, at the rate of four per centum upon the basis of its net income for the next preceding fiscal or calendar year.

"Each such corporation shall be entitled to an offset against said franchise tax, in the manner thereinafter provided, in the amount of taxes paid upon its *real* and *personal* property to any county, city and county, city, town, or other political subdivision of the state, but the total offset shall not exceed seventy-five per centum of the said franchise tax, and in no case shall the taxpayer be entitled to offset *more than* ten per centum of its said *real property* taxes." (Italics ours.)

The plaintiff is the owner and holder of certain oil and gas leases. It returned them as personal property. The franchise tax commissioner reclassified them as real property, and directed the plaintiff to pay a tax in accordance with the revised classification. First duly protecting itself by taking the statutory steps as conditions precedent thereto, the plaintiff paid the tax as directed and thereafter, under section 30 of the act (Stats. 1929, p. 19), commenced this action to recover the amount so paid under protest.

The plaintiff argues that a leasehold interest is personal property and that it has been so held in this state. (*Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345 [45 Pac. 680], *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529 [76 Pac. 243], and *Guy* v. *Brennan*, 60 Cal. App. 452 [213 Pac. 265]; see, also, *Dabney* v. *Edwards*, 81 Cal. App. Dec. 230 [43 Pac. (2d) 848].) No one of those cases involved a tax statute. On the other hand, in *Ventura County* v. *Barry*, 207 Cal. 189 [277 Pac. 333], the tax statutes were involved. Moreover, the nature of a tax on a leasehold interest created by certain oil and gas leases was there held to be a tax on real property. The plaintiff calls attention to the fact that in certain places the court used the expressions "real estate", "land" and "real property" as being synonymous. It then argues that such use was inadvertent and erroneous. We think such use was not inadvertent. Title IX, part III, of the Political Code uses those expressions as interchangeable in many places. It is sufficient to note and compare sections 3617, 3629 and 3650. In construing these sections it cannot be

said that the court inadvertently used certain words when they were the identical words which it was called upon to construe. In the case last cited, at page 195, the court also quoted with approval as follows: "In the case of *People* v. *Smith*, 123 Cal. 70 [ 55 Pac. 765], it is said: 'Section 3617 of the Political Code defines the terms used in the assessment of property for the purposes of taxation, and these definitions must control in matters relating to taxation, whether they conform to the definitions used in the law for other purposes or not.' And again, in *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662 [9 Ann. Cas. 1190, 87 Pac. 190], it was said: 'Moreover, we think that, for the purpose of the revenue to the district, the definition of real property and personal property in the general revenue and taxation laws of the state, as found in the Political Code, must prevail.' " Therefore, in determining whether a tax on an oil lease is a tax on real property this court should follow *Ventura County* v. *Barry, supra,* and hold that it is when construing the provisions of the Political Code. It remains for us to consider the meaning of "real property" and "personal property" when used in the Bank and Corporation Franchise Tax Act. That act is solely a tax statute. So is title IX, part III, of the Political Code. Both statutes are, at least in part, addressed to the acts of the same officers regarding, in part, the same matters. Both were enacted to carry into effect article XIII of the Constitution. It is a fundamental rule of statutory construction that statutes *in pari materia* must be construed together. Nothing to the contrary appearing on the face thereof, it is clear that the same expressions should be given the same meanings in both statutes. Said rule is peculiarly pertinent in construing taxation statutes. (*Old Homestead Bakery, Inc.,* v. *Marsh,* 75 Cal. App. 247, 258, 259 [242 Pac. 749].) Applying that rule in the instant case it is clear that "real property" and "real estate" are used as synonymous terms in both statutes.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.