[L. A. No. 16942. In Bank.—August 26, 1940.]

SAN DIEGO TRUST & SAVINGS BANK (a Corporation) et al., Respondents, v. COUNTY OF SAN DIEGO et al., Appellants.

144

James B. Abbey, District Attorney of San Diego County, Carroll H. Smith, Deputy District Attorney, Roger J. Traynor, Dixwell L. Pierce, Henry C. Ramsey and George M. Johnson for Appellants.

Earl Warren, Attorney-General, and H. H. Linney, Deputy Attorney-General, as *Amici Curiae,* on Behalf of Appellants.

Hugh A. Sanders, J. Dean La Motte and Sanders & La Motte for Respondents.

O'Melveny, Tuller & Myers and Louis W. Myers, as *Amici Curiae,* on Behalf of Respondents.

CARTER, J.—This is an appeal from a judgment granting an injunction permanently enjoining defendant, Crowell D. Eddy, as assessor of the defendant County of San Diego, from assessing as real property for local taxation purposes certain vault doors and other equipment belonging to the plaintiff banking corporations.

Plaintiffs were the owners of certain vaults, vault doors, an elevator, marble and bronze decorations, air conditioning systems, steam heating and ventilating systems, iron grille work and cages and counters, all of which were used by said plaintiffs in the conduct of their banking business in San Diego County. On the first Monday in March, 1938, said county assessor proposed to enter this property upon the tax rolls of said county as improvements on real property and subject to assessment and taxation by said county.

Contending that the equipment was personal property, and therefore exempt from *ad valorem* taxation under the provisions of section 16–1 (a) of article XIII of the Constitution of the State of California, plaintiffs asked for an injunction restraining the assessor from making the contemplated assessment.

At the opening of the trial it was stipulated that the decision as to the vault doors would control as to all the property in question except the vaults and elevator. At the close of the evidence and before argument it was further stipulated that the court might find that each of the vaults in question, as distinguished from vault doors, was real property for the purposes of local taxation "except in those instances where the relationship of landlord and tenant or lessor and lessee exists".

The court found in accordance with the stipulations, and further found that the elevator mentioned was real estate for the purposes of local taxation and that all the vault doors in question were personal property.

As one of its conclusions of law the court found that section 61 of the Bank Act (Stats. 1909, p. 87, as amended, Deering's Gen. Laws, Act No. 652) was applicable in the classification of property of banking corporations as real or personal for purposes of local taxation.

Judgment was entered accordingly and this appeal was taken from that portion of the judgment which restrains the assessor from assessing any of the property in question as realty for purposes of taxation.

In view of the stipulations entered into, the main question presented on this appeal is whether bank vault doors are real property within the meaning of that phrase as used in section 3 of the Bank and Corporation Franchise Tax Act (Deering's Gen. Laws, Act No. 8488).

That section, pursuant to section 16-1 (a) of article XIII of the state Constitution, provides that the franchise tax imposed by sections 1 and 2 of the act shall be "in lieu of all other taxes and licenses, state, county and municipal", upon state and national banks "except taxes upon their real property".

There is practically no conflict in the evidence and the controversy is entirely as to the principles of law which should be applied. It appears from the evidence that the walls, ceilings and floors of the vaults are constructed of heavy concrete reinforced with steel. The vault doors come anchored in a metal frame, the door and frame constituting one complete unit. The opening of the concrete vault into which the door is installed is slightly larger than the frame of the vault door. In installing the door and frame, the rear

flange which is attached to the back of the door is removed, the door and frame are then set in the opening and the rear flange is again screwed to the frame. Then, after the door is leveled and held in place by steel or wooden wedges, concrete is poured in between the sides of the vault opening and door frame to keep the latter rigid and from falling out. The door and frame may be removed by removing the inner flange and knocking out the concrete wedge, when the whole assembly can be removed without actual injury to the vault proper.

Section 61 of the Bank Act, which the trial court found applicable in the classification of the property with which we are here concerned, reads in part: ''Any savings bank may purchase, hold or sell real or personal property, as follows: I. The lot and buildings in which the business of the bank is carried on; furniture and fixtures, vaults and safe deposit boxes and other personal property, such as may be necessary or proper to carry on its banking business;'' . . . Section 84 of the Bank Act reads: ''No commercial bank shall hereafter invest an amount exceeding one-half of its paid up capital and surplus in the lot and building in which the business of the bank is carried on, furniture and fixtures, vaults and safe deposit vaults and boxes necessary or proper to carry on its banking business. . . . ''

It is the plaintiffs' position that said section of the Bank Act defines vaults and vault doors to be articles of personal property; that at the time of the enactment of the Bank and Corporation Franchise Tax Act, the legislature had said definition in mind; and that the legislature did not intend to compel banks to pay an *ad valorem* tax on their necessary equipment as well as a franchise tax upon the income derived from the use thereof, but that instead it intended to exempt this necessary equipment from local taxation by providing in the act the ''in lieu'' clause thereof.

We are not convinced that the legislature by the enactment of sections 61 and 84 of the Bank Act meant to define what property of banking corporations should be .realty and what should be personalty. We are likewise not impressed with the argument that the legislature had such purported definitions in mind when it enacted the Bank and Corporation Franchise Tax Act. Even if the latter were true the same argument applies, and with more force, to section 3617

of the Political Code which classifies and defines property for taxation purposes.

■ The general proposition that tax statutes govern in tax controversies is well settled. (Cooley on Taxation, 4th ed., vol. 2, p. 1217, and vol. 3, p. 2145, and cases cited thereunder.) The Bank Act, under consideration here is not a tax statute but a regulatory statute intended to regulate the business of banking.

■ It has often been declared judicially, and it is well settled in this state, that the definition of property contained in the provisions relating to taxation in the Political Code controls the classification of property for taxation purposes. (*People* v. *Smith*, 123 Cal. 70, 75 [55 Pac. 765]; *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662 [87 Pac. 190, 9 Ann. Cas. 1190]; *County of Ventura* v. *Barry*, 207 Cal. 189 [277 Pac. 333]; *Southern California Tel. Co.* v. *State Board of Equalization*, 12 Cal. (2d) 127, 132 [82 Pac. (2d) 422].)

■ The plaintiffs point out that Political Code, section 3617, reads: "Whenever the terms mentioned in this section are employed *in this title*, they are employed in the sense hereafter affixed to them." (Emphasis added.) However, the above cases have uniformly applied the section as a statute of general definition to be used in the interpretation of all tax statutes.

That the meanings of the terms "real property" and "personal property" when used in the Bank and Corporation Franchise Tax Act are determined by reference to title IX, part III, of the Political Code was decided in the case of *Jameson Petroleum Co.* v. *State*, 11 Cal. App. (2d) 677, 680 [54 Pac. (2d) 776]. The question involved therein was whether or not oil and gas leases were real property for purposes of taxation under the Bank and Corporation Franchise Tax Act. The court held that both the Bank and Corporation Franchise Tax Act and title IX, part III, of the Political Code were tax statutes; that both were enacted to carry into effect article XIII of the Constitution; and that since they were statutes *in pari materia*, they were to be construed together.

Similarly, the character of the property here in question for purposes of taxation under the Bank and Corporation

Franchise Tax Act is also determinable by reference to title IX, part III, of the Political Code.

Section 3617 of the Political Code, referred to in *People v. Smith, supra,* as defining the terms used in the assessment of property for purposes of taxation, describes the term "real estate" to include "improvements", then defines the term "improvements" as including "all buildings, structures, fixtures, fences, and improvements erected upon or affixed to the land, except telephone and telegraph lines". By section 660, Civil Code, the term "affixed to land" is defined as follows: "A thing is deemed to be affixed to land when it is attached to it by its roots, as in the cases of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws. . . . "

Pursuant to a stipulation of the parties the trial court found that the masonry vaults to which the vault doors here in question are attached were an improvement to the realty.

Even without the stipulation we are of the opinion that such must have been the finding.

The vaults themselves are of heavy steel and masonry construction, and they rest upon the floor of the buildings in which they are erected. Their size and the solidity of their construction, as well as the importance of their use in the carrying on of a banking business, indicate a quality of permanence and an intent that their affixation to the premises upon which they are resting should not be of a transitory or impermanent nature. (*Realty Dock & Improvement Corp.* v. *Anderson,* 174 Cal. 672 [164 Pac. 4].) Furthermore, since the purport of the evidence was that more often than not the removal of such vaults would necessitate their destruction, the monetary loss occasioned thereby cannot be disregarded. It was testified at the trial that such vaults may cost approximately $6,000. The fact that the lifetime of such a vault is deemed to be indefinite, or perhaps commensurate with the life of the building in which it is located, unless otherwise voluntarily destroyed, presupposes an intent that its annexation is to continue for a long period of time. When an article must be destroyed in order to accomplish its removal this has been held to be a factor indicating the permanency of its affixation. (*Western Union*

*Tel. Co.* v. *Modesto Irr. Co., supra; Hendy* v. *Dinkerhoff,* 57 Cal. 3 [40 Am. Rep. 107]; *Tifft* v. *Harton,* 53 N. Y. 377, 384 [13 Am. Rep. 537]; *Ford* v. *Cobb,* 20 N. Y. 344.)

■ In considering the character of the vault doors, which are the subject of this controversy, we must apply the three tests which have often been used by this court in determining whether or not an article is a fixture—namely: (1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation. (*Lavenson* v. *Standard Soap Co.,* 80 Cal. 245, 250 [22 Pac. 184, 13 Am. St. Rep. 147]; *Hendy* v. *Dinkerhoff, supra; Western Union Tel. Co.* v. *Modesto Irr. Co., supra; Gosliner* v. *Briones,* 187 Cal. 557 [204 Pac. 19]; *Jahnke* v. *Jahnke,* 81 Cal. App. 387, 391 [253 Pac. 752]; *County of Los Angeles* v. *Signal Realty Co.,* 86 Cal. App. 704, 711 [261 Pac. 536].)

It is undisputed that the vault doors in question are affixed to the realty in a manner to bring them within the class of fixtures as defined in the Civil Code. (Sec. 660.)

Without the stipulation that vault doors were adaptable to the banking purposes for which the plaintiffs herein were using the land and buildings, it is apparent that they are useful and necessary thereto. The fact that vault doors play a prominent part in the protection of the moneys and valuables which are entrusted to a bank for safe keeping, as one of its main functions, is too obvious to require further mention.

■ As between private parties such as those bearing the relationship to each other of landlord and tenant, or vendor and vendee under a conditional sales contract, their mutual intention as to whether an article is a fixture and part of the realty or is personalty is the controlling factor. As to third persons who are not parties to any such private agreements, however, the intent which controls is not a secret hidden intent but that manifested by the physical facts, giving due consideration to the status of the party by whom the articles have been installed. (*Southern California Tel. Co.* v. *State Board, supra; M. P. Moller, Inc.,* v. *Wilson,* 8 Cal. (2d) 31, 37 [63 Pac. (2d) 818]; *City of Los Angeles* v. *Klinker,* 219 Cal. 198 [25 Pac. (2d) 826, 90 A. L. R. 148]; *Gosliner* v. *Briones, supra; Oakland Bank of Savings* v. *Cali-*

*fornia Pressed Brick Co.,* 183 Cal. 295 [191 Pac. 524] ; *Lavenson* v. *Standard Soap Co., supra.*)

Observation of these physical facts in the case at bar is enlightening.

 It is significant that in nearly every instance the party installing the vault doors owned the building in which the same were installed. In the cases where the doors were annexed to leased premises, the annexors occupied the property under long term leases varying in duration from approximately ten to fifty years. In the one instance, where the annexor held the premises under a month-to-month tenancy, it had in fact occupied the property continuously for more than twenty years and had no intention of moving its quarters.

The nature of a vault door itself suggests an intent permanently to affix it to a vault which by ordinary tests must be said to constitute an improvement to realty. Vaults alone without doors would not be useful as vaults, and would fail in their intended purpose. Both functionally and physically a vault door is integrated with the vault itself. Certainly vaults and vault doors constitute a unit for use together and are improvements to the realty. (*Southern California Tel. Co.* v. *State Board, supra; City of Los Angeles* v. *Klinker, supra,* at 207; *White* v. *Cincinnati etc. R. R.,* 34 Ind. App. 287 [71 N. E. 276].)

It was held in *Woods* v. *Bank of Haywards,* 10 Cal. App. 93, 95 [106 Pac. 730], that a vault door is a part of the vault. Although the court therein determined that the steel lining of the vault could be removed without damage to the safe or to the freehold and was a trade fixture, it said: "the whole structure, comprising the brick work, steel lining, vestibule and door, constitute what is referred to in the lease as a vault". In the case of *Bank of America Nat. T. & S. Assn.* v. *New York L. Ins. Co.,* 16 Cal. App. (2d) 719 [61 Pac. (2d) 364], the trial court found that safety vault doors were affixed to the realty by one or more of the means of affixation named in section 660 of the Civil Code and concluded that they were a permanent and integral part of the realty and not removable under Civil Code, section 1019. Upon appeal in view of conflicting evidence as to the character of the affixation of bank fixtures this finding was not

disturbed. (See, also, *Realty Dock etc. Corp.* v. *Anderson, supra.*)

As appears hereinabove, vault doors are attached to vaults by means of screwing the "rear" flange into place, hanging the door, then attaching the whole securely to the vault by means of cement.

The mere fact that said doors can be removed without material damage to the vaults by chipping away with a chisel, jack hammer, or compressed air hammer, the cement grouting which attaches them to the vaults, does not alone establish their character as articles of personalty. A door or window in an ordinary dwelling house can be removed with very little damage to the realty. It also may be replaced by one of different design or by a new one if the former should become broken or defective, but no one would contend that either was not a part of the realty by reason of these facts alone.

The existence or period of use of a vault door is measured by the life of the building to which it is annexed unless it becomes obsolete or mechanically defective. In order to make an article a permanent accession to the land its annexation need not be perpetual. It is sufficient if the article shall appear to be intended to remain where fastened until worn out, until the purpose to which the realty is devoted has been accomplished or until the article is superseded by another article more suitable for the purpose. (26 C. J. 657, sec. 6.)

The vault doors here in question vary in original cost from $1800 to $20,000. Their resale value was testified to be but 25 per cent of that original cost. The monetary loss involved in a continuous and frequent replacement of such doors would negative the fact that their removal and replacement was intended to be a very common occurrence.

The size of the vault doors and the resultant expense and inconvenience in moving and replacing them also rebuts the proposition that their installation was intended to be a mere temporary thing. The record shows that the doors may vary in weight from three to forty tons. It also reveals that such removals and replacements are in fact infrequent—one witness testified that he had replaced but two in twenty-nine years. Although there was other testimony that replacements were made more often, still, as a whole, it revealed they were not an every day, an every year, or an every two or

three year occurrence. The removals appeared to have taken place most often in cases of obsolescence, mechanical defect or discontinuance of the owner in the banking business.

None of these factors taken alone might establish the annexor's intent permanently to affix the vault doors to the realty, but, viewed together in their entirety, we are unable to perceive that any other intention can be inferred therefrom.

In those instances where the owner of the vault doors is also the owner of the building to which they are annexed their classification as real property for purposes of taxation creates no further problem. Where the owner of the vault doors has annexed his property to the real property of another, however, the question immediately arises as to whom the tax on the vault doors shall be assessed. We are reluctant to render this decision without first disposing of that question, since we are of the opinion that it could well be considered here. However, at the opening of the trial of this case counsel for both parties stated to the trial court that said question was not to be considered as an issue in this case inasmuch as it was said to be at issue in a proceeding for a writ of prohibition (No. 91,260) "trailing" this case and trial of which has by stipulation been held in abeyance pending this decision. The trial court, therefore, did not consider the question, nor did the parties discuss it in their briefs. In order therefore to permit the parties the benefit of their briefs and argument we shall not determine that question in this opinion.

The plaintiffs contend that since the Constitution of the United States and the federal statutes prohibit a state from assessing the personal property of a national bank, an assessment such as here contemplated by the defendants would deprive national banks of a substantive right guaranteed to them by the provisions of the Constitution and federal statutes. They refer to section 5219 of the Revised Statutes (U. S. C. A., sec. 548 of title 12) which grants a state permission to tax only the shares of stock and real property of national banks. The cases cited by the plaintiffs as determining that furniture and other personal assets are exempt from state taxation are cases where the character of the property was not in question and hence are not helpful in the determination of the case at bar.

■ The fact that under the rules and regulations of the controller of the currency, national banks must from time to time furnish to said controller, and publish at regular intervals, a sworn statement of their assets and liabilities and in this statement segregate the real estate and personal property owned by them, and that in such classifications they list vaults and vault doors as personal property, has no bearing on the character of said property for purposes of taxation. There is no indication that said classification was made for purposes of taxation, nor with the intent to establish the legal status of vaults and vault doors as realty or personalty. (*Southern Cal. Tel. Co.* v. *State Board, supra.*)

■ The plaintiffs maintain that the trial court's finding that the vault doors were personal property is a finding of fact and binding upon this court. However, as there was no conflict in the evidence, the finding of the trial court on this issue amounted to a conclusion of law, which in our view was erroneous. (*Leis* v. *City and County of San Francisco,* 213 Cal. 256, 258 [2 Pac. (2d) 26]; *Gaston* v. *Hisashi Tsuruda,* 5 Cal. App. (2d) 639, 642 [43 Pac. (2d) 355].) We are of the opinion that the only conclusion which can be reached from a consideration of all the evidence is that said doors constitute a part of the realty.

The judgment appealed from is therefore reversed with directions to the trial court to make findings of fact and conclusions of law and enter judgment thereon in accordance with the views herein expressed.

Shenk, J., Houser, J., and Gibson, C. J., concurred.

EDMONDS, J., Dissenting.—For several reasons I cannot join in the conclusions of my associates in this case.

In the first place, the judgment from which this appeal was taken is based upon findings of the trial judge that the vault doors of the respective banks are personal property. These findings were made upon issues of ultimate fact framed by the pleadings, and are conclusive upon appeal if there is any substantial evidence to support them.

It is a settled rule of law that whether a chattel is a fixture depends upon the circumstances concerning its annexation to real property and presents a question of fact. (Sec. 660, Civ. Code.) In *Southern California Tel. Co.* v.

*State Board,* 12 Cal. (2d) 127, 134 [82 Pac. (2d) 422], this court pointed out that "a thing becomes a fixture when it is 'permanently attached' to the realty and permanence has reference to intent". The character of the annexation and the use to which the article is to be put may be considered in this connection, but such evidence is received to throw light upon the intention in regard to permanence.

Although a vault without a door would be useless for all practical purposes, it certainly does not necessarily follow that a vault must always be fitted with the same door. Indeed, all of the evidence in this case supports a contrary conclusion. According to the testimony, vault doors in many different sizes are built by the manufacturers of safes and locks. Such doors vary in thickness, quality, efficiency and cost. They are kept in stock by the manufacturers of and dealers in such equipment and are usually sold from catalogues and photographs.

A complete vault door unit consists of the door and frame in which it hangs, which is called the "vestibule". Vaults are built so that this entire assembly can be taken out by removing a concrete wedge, and the evidence shows that this is frequently done. One witness testified that he had been in the vault business in San Diego for more than 20 years and had removed many bank vault doors and replaced them with others, always without injury to the building or walls. It is also in evidence that one bank maintains warehouses in various cities of the state in which it keeps vault doors, burglar alarms and various other banking fixtures, which previously had been installed in banking premises and later removed therefrom for the purpose of replacement or change; that it keeps many vault doors on hand in these warehouses and makes a great many changes in its equipment each year, all without injury to the doors or the vaults or the buildings.

According to this testimony, a bank vault is built to allow not only the installation of one particular door but also of any other which may later be found more efficient in operation or more resistant to calamity and attack. Obviously, the growth of a bank's business may require many changes in its physical structure and vaults and vault doors are designed and built to allow for expansion and improvement. These facts not only negative any inference of permanence but affirmatively show an intention to attach vault doors in a

manner which will allow them to be changed from time to time with a minimum of expense. The evidence, as I read it, not only amply supports the finding of the trial judge but compels it.

But, my associates say, as there is no conflict in the evidence, the finding of the trial court must be considered as a conclusion of law. This statement is an incomplete one. The rule is that where the facts are undisputed and only one rational inference may be drawn from them, an appellate court as a matter of law may determine the correct finding to be made upon those facts. (*Gaston* v. *Hisashi Tsuruda,* 5 Cal. App. (2d) 639, 642 [43 Pac. (2d) 355].) But if a finding of fact is based upon a reasonable inference drawn from the evidence, it may not be set aside by an appellate court. (*County of Alameda* v. *Tieslau,* 44 Cal. App. 332, 339 [186 Pac. 398].)

Here the finding of fact made by the trial judge rests upon his inference, drawn from the evidence before him, that the vault doors in controversy were not attached with the intention of permanence. This evidence includes the character of the doors, the means by which they were attached, their purposes, and the custom and practice of the respondents and other banks concerning such equipment. Another equally reasonable inference might possibly have been drawn from these facts. But it is the exclusive province of the trial court or jury to determine issues of fact, and an appellate court may only set aside a finding of fact when it is not supported by substantial evidence.

Moreover, in my opinion, the state has classified vault doors as personal property. The Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, as amended; Deering's Gen. Laws, Act 8488) imposes a tax upon banks which shall be in lieu of all other taxes "except upon their real property". The Bank Act (Stats. 1909, p. 87, as amended; Deering's Gen. Laws, Act 652) specifies the property which a savings bank may purchase and hold as follows: "The lot and building in which the business of the bank is carried on; furniture and fixtures, vaults and safe deposit vaults and boxes and other personal property such as may be necessary or proper to carry on its banking business: . . . " (Sec. 61.) This law also limits the amount which a commercial bank is permitted to invest "in the lot and building in which the busi-

ness of the bank is carried on, furniture and fixtures, vaults and safe deposit vaults and boxes necessary or proper to carry on its banking business . . . '' (Sec. 84.) Here are two legislative classifications of vault doors as personal property, in so far as the right of banks to purchase or own them is concerned.

It is said that these definitions or classifications are not controlling as against the provisions of section 3617 of the Political Code, which specifies the different classes of property which are subject to taxation. But this section contains no definition of a fixture, and the meanings of the terms mentioned in it are expressly restricted to the title of the code in which it is found. The Bank and Corporation Franchise Tax Act, *supra*, is not a part of this title.

Stated in its essential particulars, the position of the taxing authorities is that, although a bank must carry on its business in accordance with the legislative requirements which classify vault doors as personal property, it must pay taxes upon them as real property. This is both legally unsound and morally unfair.

For still another reason I believe that the judgment of the trial court should be upheld.

The Bank and Corporation Franchise Tax Act, *supra,* subjects the real property of banks to local taxation. It also grants to the state's subordinate agencies the right to levy taxes upon the real property of banks. In its application to either of these purposes, the rule, *strictissimi juris,* applies. Grants of power from a sovereign to a subordinate are always strictly construed against the grant. (23 Cal. Jur. 804.) And statutes imposing taxes *in invitum* are always strictly construed against the state and in favor of the taxpayer. (*Barker Bros.* v. *City of Los Angeles,* 10 Cal. (2d) 603 [76 Pac. (2d) 97]; *Uhl* v. *Badaracco,* 199 Cal. 270 [248 Pac. 917].) Thus we have these two settled rules coming together in the present situation, each reinforcing the other, with the result that, for the purposes of the instant case, the phrase ''real property'' must be given the strictest definition and the narrowest application to which it is susceptible. Such a definition assuredly does not include bank vault doors under the facts in evidence.

Appellants may possibly contend that this case falls within the converse rule of statutory construction, that statutes grant-

ing exemption from taxation are to be construed in favor of the state and against the taxpayer. But this case does not fall within that rule. Section 3 of the Bank and Corporation Franchise Tax Act, *supra,* provides that the franchise tax paid by banks "shall be in lieu of all other taxes and licenses . . . ". This court has held that such an "in lieu" tax is not to be regarded as granting an exemption. (*San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244 [135 Pac. 971]; *Northwestern M. L. Ins. Co.* v. *Johnson,* 8 Cal. (2d) 42 [63 Pac. (2d) 814].)

Moreover, so far as the respondent national banks are concerned, this is a case "arising under the Constitution and laws of the United States"; in such a case the federal statutes are paramount, and the relevant decisions of the federal courts construing and applying those statutes are controlling upon the courts of this state. This is because national banks are immune from state taxation, except in the manner and to the extent that such taxation is authorized by congress. The sole congressional authorization for state taxation of national banks is contained in Revised Statutes, section 5219 (12 U. S. C. A. 548) which authorizes taxation of their real property. This grant from the national government to the states, of permission to tax the real property of national banks, must be strictly construed against the grantee, as are all grants from a sovereign. (23 Cal. Jur. 804.) It follows that a state which imposes a tax upon property of a national bank must bring itself within the boundaries of this narrow and strictly limited congressional permission.

For these reasons I am of the opinion that the judgment of the trial court should be affirmed.

Rehearing denied. Traynor, J., did not participate.