[Civ. No. 10843.   Second Appellate District, Division One.—October 7, 1936.]

BANK OF AMERICA NATIONAL TRUST AND SAV-
INGS ASSOCIATION (a National Banking Associa-
tion), Appellant, v. NEW YORK LIFE INSURANCE
COMPANY (a Corporation) et al., Respondents.

Louis Ferrari, Edmund Nelson, G. L. Berrey, O'Melveny, Tuller & Myers, Louis W. Myers, Jackson W. Chance, Ray H. Lindman and Baird Kidwell for Appellant.

Banta, Cooper & Dulin and W. Fenimore Cooper for Respondents.

WHITE, J., *pro tem.*—This is an appeal from a judgment in favor of defendants in an action for conversion. The facts material to this litigation are that in 1925 Pacific National Building Corporation constructed a twelve-story bank and office building at 855 South Hill Street in the city of Los Angeles. All of the stock of Pacific National Building Corporation was owned by a parent holding company known as Pacific National Company. Prior to the completion of the building, the ground floor and basement thereof were leased to Pacific National Bank, predecessor in interest of the plaintiff herein, and in which Pacific National Bank the Pacific National Company owned some stock. After execution of the lease, the tenant bank purchased and caused to be installed certain safety vault equipment, safety vault doors, time locks and burglar alarms. The original lease to the bank was made November 21, 1925, for a term of twenty-five years, and contained the following provision:

"SIX: The lessee may install such banking and other fixtures as in its judgment are desirable in connection with its business, including safety vault equipment, safety vault doors, time locks, burglar alarms and lighting fixtures; and may also maintain electric and other signs upon the exterior of said building, in compliance with the ordinances and regulations of the City of Los Angeles, and may, from time to time remove and substitute other fixtures, *but not in such a manner, or of such character, as to affect the structure of the building or the stability of the same. At the expiration or termination of this lease, or of any extension or renewal thereof, the lessee shall have the privilege of removing any and all trade and other fixtures and equipment installed by it.*"

On July 22, 1929, Pacific National Bank assigned this lease to Pacific National Company, the holding company, in consideration of the assignee's assuming the obligations of

the lease and giving back to Pacific National Bank a sublease for two years. The building company consented to the assignment, accepted the bank's assignee, Pacific National Company, as its tenant, and released the bank from the obligations of the lease. Contemporaneously therewith a sublease was made, as agreed, to Pacific National Bank for two years. In this sublease we find paragraph five, reading as follows:

"FIVE: The sub-lessee may maintain as now installed, its present banking and other fixtures, including safety vault equipment, safety vault doors, time locks, burglar alarms and lighting fixtures, and may from time to time, at its own expense, repair the same, and may enjoy the same privileges as it has heretofore enjoyed of maintaining electric and other signs upon the exterior of said Pacific National Bank Building in compliance with the ordinances and regulations of the City of Los Angeles. *The sub-lessee shall not remove its fixtures, or safety vault equipment, or safety vault doors, time locks, burglar alarms, or lighting fixtures upon the expiration or termination of this sublease or any extension or renewal thereof,* but the sub-lessee agrees to sell, and the sub-lessor agrees to purchase the same, as covered by separate agreement between the parties hereto, at and for the stipulated price mentioned in the said agreement."

On October 14, 1929, Pacific National Bank assigned the foregoing sublease to Bank of Italy National Trust and Savings Association, which was the former name of plaintiff bank herein. With the status of the parties thus fixed, on April 25, 1930, Pacific National Building Corporation, the owner of the premises, executed a mortgage in favor of the defendant New York Life Insurance Company, to secure a loan of $1,225,000 for ten years. On June 11, 1931, Pacific National Company sublet the premises to the plaintiff bank for a period of six months, beginning on July 22, 1931. Section 4 of this sublease provided that the plaintiff bank herein, as sublessee, could maintain "as now installed, its present banking and other fixtures, including safety vault equipment, safety vault doors, time locks, burglar alarms and lighting fixtures, and may from time to time, at its own expense, repair the same, and may enjoy the privilege of maintaining electric and other signs upon the

exterior of said Pacific National Bank Building in compliance with the ordinances and regulations of the City of Los Angeles. The sub-lessee shall not remove its fixtures, or safety vault equipment, or safety vault doors, time locks, burglar alarms, or lighting fixtures upon the expiration or termination of this sub-lease or any extension or renewal thereof, but the sub-lessee agrees to sell, and the sub-lessor agrees to purchase the same for the sum of $326,059.69, as provided by separate agreement between the parties hereto, and by an agreement between the sub-lessor and Transamerica Company, a corporation, dated June 30, 1930, extending the guaranties in a former agreement between the same parties dated July 17, 1929.''

On December 23, 1931, the tenant, Bank of America, with the written consent of the building corporation, entered into an agreement, called a lease and option, whereby the bank, as lessor, leased to Pacific National Company, as lessee, the property in controversy for a term of ten years beginning January 2, 1932, at $100 per month, with an option to buy the property at any time before January 1, 1934, for $10,000, plus interest. At the same time, Pacific National Company and Transamerica Corporation entered into an agreement, which was ratified by Bank of America, whereby Transamerica Corporation released Pacific National Company from its obligation to purchase the vault fixtures.

On September 20, 1933, defendant New York Life Insurance Company, in the Superior Court of Los Angeles County, obtained a decree of foreclosure of its said mortgage and an order for the sale of the property covered by the mortgage. Subsequently, on November 5, 1934, the sheriff of Los Angeles County caused to be executed and delivered to defendant insurance company his deed conveying to defendant insurance company the property which was the subject of said mortgage. When, therefore, in December, 1933, the lease and option agreement heretofore mentioned between Bank of America and Pacific National Company, dated December 23, 1931, had expired, the defendant New York Life Insurance Company had foreclosed its mortgage and obtained the sheriff's deed to the property encumbered by said mortgage. Thereafter the plaintiff bank demanded possession of the banking equipment which is the subject of this action; and the demand being

refused by defendants, this action was commenced, resulting in a judgment for the defendants, from which plaintiff bank prosecutes this appeal.

Appellant urges a reversal of the judgment on several grounds; the first of which is based on the claim that the property involved in this action is established to be personal property both by its nature, history, use and manner of affixation, and by agreement between the parties with respect thereto, of which agreement it is claimed respondent insurance company had actual and constructive notice and was bound thereby.

■ The question as to what constitutes a fixture is a question of fact, to be determined from the evidence in the particular case. (*Alderman* v. *Baggett,* 134 Cal. App. 501 [25 Pac. (2d) 532].) Section 1019 of the Civil Code provides that a tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises.

The trial court, after hearing the evidence and viewing the premises, found that delivery of the property here in question could not be accomplished without injury to the building to which said property is attached; and further found that with the exception of the individual safe deposit boxes, each of the other articles had been affixed to the building and real property by means of one or more of the methods of affixation named in section 660 of the Civil Code, and were affixed in such a manner as to become a permanent and integral part of said building. Appellant contends that these findings lack support in the evidence. We have read the record, and have no hesitancy in saying that while a conflict appears, still the evidence in support of these findings possesses ample substantiality, consisting as it does of direct and positive testimony in support thereof, fortified with a view of the premises by the trial court. It requires no citation of authority for asserting the rule that when a judgment is attacked as being unsupported by the evidence, the power of the appellate court in passing upon this question begins and ends with a determination as to

whether there is any substantial evidence, contradicated or uncontradicted, which will support the decision and judgment of the trial court. With reference to the conflicting testimony in the instant case concerning the character of the affixation of the bank fixtures, the trial court was within its right in resolving that conflict in favor of respondent. (*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 708 [242 Pac. 703]; *Boland* v. *Gosser*, 5 Cal. App. (2d) 700 [43 Pac. (2d) 559]; *MacDermot* v. *Hayes*, 175 Cal. 95, 104 ]170 Pac. 616].)

It seems to us that the only other ground upon which appellant would have a right to remove the property in question from the premises would be by reason of an agreement between landlord and tenant, in full force and effect at the time respondent insurance company's rights under the mortgage attached, and of which agreement the mortgagee was charged with notice. When, as in the instant case, it appears that the property, by the manner of its affixation, became an integral part of the premises and could not be removed without affecting the structure or stability of the building, then the agreement between landlord and tenant alone must govern. It follows of necessity that even if an agreement was entered into between the landlord and tenant for such removal, that right of removal may also be surrendered by agreement. In the case now before us we are of the opinion, from a reading of the evidence, that the original bank tenant installed the fixtures here in question pursuant to the provisions of the original lease, whereby title to the fixtures remained in the tenant, where, in our opinion, it continued to remain until the execution of the aforesaid assignment of lease on July 22, 1929, at which time Pacific National Company, which owned all of the stock of Pacific National Building Corporation, which latter company held title to the land, executed to the bank a sublease for two years, under the terms of which Pacific National Bank, predecessor in interest of appellant herein, surrendered its right to remove the fixtures in question and covenanted with the company that the bank ''shall not remove its fixtures, or safety vault equipment, or safety vault doors, time locks, burglar alarms, or lighting fixtures upon the expiration or termination of this sub-lease or any extension or renewal thereof, but the sub-lessee agrees to sell, and the sub-lessor agrees to purchase the same, as covered by separate

agreement between the parties hereto, at and for the stipulated price mentioned in the said agreement''.

When the original bank tenant assigned its lease it became necessary to dispose of the fixtures. The record here discloses that the assignor chose to and did sell the fixtures to the assignee. Surely it cannot logically be contended that after the assignment of lease on July 22, 1929, the original tenant bank, which was the predecessor in interest of appellant, possessed or exercised, or had any right to exercise, dominion over the personal property, and that, after all, is of the essence of ownership of personal property. With reference to the fixtures, the tenant bank, under the indenture of sublease to it from Pacific National Company under date of July 22, 1929, specifically agreed not to remove the fixtures or safety vault equipment, or safety vault doors, time locks, burglar alarms, or lighting fixtures upon the expiration or termination of the so-called last-named sublease, but agreed to sell and deliver the same to the sublessor for a stipulated and agreed sum.

█ Appellant contends that the ''open and notorious possession'' of the premises in which the fixtures were installed by the tenant bank constituted constructive notice to respondent of the tenant bank's rights and should have put respondent on notice to make an inquiry. Assuming this to be true, yet if respondent had made inquiry it seems to us it would only have learned that the bank was without title to the fixtures and had sold the same to Pacific National Company, and was, therefore, without power to remove the fixtures from the premises at any time.

█ Appellant next contends that respondent mortgagee insurance company had actual notice that the vault equipment, etc., belonged to the tenant bank. This claim is based upon conversations had by representatives of respondent insurance company with officials of the bank who were seeking the loan from the insurance company, and at least one of which bank officials was an officer of the company soliciting the loan. The evidence on this issue is in conflict, but there is sufficient in the record to sustain the finding of the trial court that the officers of Pacific National Bank, predecessor in interest of appellant bank, so conducted themselves as to lead the appraisers for respondent mort-

gagee insurance company to believe that the vault fixtures were a part of the security for the loan.

Other points raised do not require discussion.

For the foregoing reasons, the judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 5, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 3, 1936.