[Civ. No. 20357.   Second Dist., Div. Two.   Feb. 28, 1955.]

OLIN J. HESSELL et al., Plaintiffs and Respondents, v. MARGARET E. HEALEY, Defendant and Respondent; CHARLES G. RUSSELL et al., Appellants.

A. James Ayers and Benjamin D. Brown for Appellants.

Watling & Kelleher and Robert J. Kelleher for Plaintiffs and Respondents.

Joseph Scott, J. Howard Ziemann, A. H. Risse and G. L. McFarland for Defendant and Respondent.

FOX, J.—The basic issue on this appeal is whether a paint spray booth which was installed in a building at a gasoline service station was so attached as to become an integral part of the premises. The trial court made affirmative findings on this question. Appellants challenge the sufficiency of the evidence to sustain such findings, assert that findings were not made on material issues and claim prejudicial error in the admission and exclusion of evidence. We find no merit in any of these attacks.

The real property on which the service station was located was owned by respondent Healey. From August, 1946, to February, 1951, Rogers Automotive Service, Inc., was the lessee of the service station and Will E. Rogers, president of the corporation, was in active operation of it. In February, 1949, Rogers purchased through his corporation the paint

spray booth here in controversy from appellants on a conditional sales contract. It was installed without the knowledge or consent of the owner of the property, Mrs. Healey, although the lease provided that "the lessee shall not make any alterations in or upon or any additions to the improvements now located and situated upon the said premises without the written consent of the lessor. . . ."

Rogers, who was delinquent on the conditional sales contract, sold his service station business, equipment and inventory to the plaintiffs, Hessell, in February, 1951. The Hessells were informed that the paint spray booth was being purchased from appellants on a conditional sales contract. They paid the appellants the balance due of $1,476.60, receiving a bill of sale providing that appellants "covenant and agree to warrant and defend the title to the property . . . against the just and lawful claims and demands of all persons whomsoever." When Mrs. Healey learned of the installation and claimed title to the booth as part of the realty, the Hessells demanded that appellants defend their title pursuant to the terms of he bill of sale. This demand was refused. Plaintiffs thereupon brought this action to quiet title to the paint spray booth, or for damages against appellants in the event the court found that title was in Mrs. Healey. Plaintiffs joined Mrs. Healey, the owner of the realty, and the vendors of the paint spray booth, Charles G. Russell and P. T. Johnston, individually, and as copartners doing business as Motor Parts Depot. The latter parties have appealed from the judgment which decreed that Mrs. Healey is the owner of the paint spray booth and that plaintiffs recover from them $1,476.60 (plus interest and attorneys' fees) which is the amount plaintiffs paid Russell and Johnston when the latter issued their bill of sale to the said booth, warranted title thereto, and agreed to defend the same against all claims and demands.

The booth was 28 feet long, 14 feet wide, and 9 feet high. It had a top but no floor. It was delivered unassembled. Such equipment in the city of Los Angeles, where this service station is located, is required to be installed inside a building. The building, however, at this service station was not large enough to completely house the paint spray booth. It protruded between 9 and 10 feet. The surface outside the building, which was blacktop, was not level with the concrete floor inside the building. It was therefore necessary at the outset to pour a concrete slab over the asphalt on the outside and thus build up the foundation so that it would be level with the floor of

the building. This slab was around 19 feet by 16 or 17 feet. It varied in thickness from a fraction of an inch to 5 inches. Since the booth was not entirely within a building it was necessary to build a roof over the portion that protruded. This roof was about 3½ feet above the top of the booth and was affixed to the brick wall of the building.

The attachment of the booth to the inside of the building can be best described by quoting briefly from the testimony of two of the witnesses. Mr. O'Connor, the agent of the owner of the property, and respondent Healey, described the situation as follows: "Then when I stepped inside the building I noticed the spray booth was in two sectional metal tops and sides and back. The front part had been—it had channel iron which was practically about two and a half to three inches in width, and put at right angles to the brick walls, and those channel irons were adhered by nails and by screws to the side of the wall.

"Looking up to the top, the spray booth had channel iron about three or four inches wide, heavy metal coming from the top of the metal spray booth bent down around to an I-beam, and that was welded.

"Q. They were welded?

"A. Yes.

"Q. You mean they welded the paint spray booth to the I-beam of the building?

"A. They were welded to the I-beam to give support and to hold the front part of that booth.

"Q. What else did you observe?

"A. And then I stepped inside, and inside that stall there was a wall which I presume was about fourteen inches of brick, and there was channel irons against it with which part of the spray booth was bolted—I should say nailed to the wall and a screw—and then on the top similarly like they had on the outside, but the ones that went on the inside they were bolts besides the welding, as over in the corners, and the spray booth was even welded in the open panels on the top."

Mr. Fulton, a witness on behalf of appellants, on cross-examination by Mr. Risse, gave the following picture of the manner in which the booth was affixed to the building:

"Q. Now, is this paint spray booth, as it is now affixed, is it rigid in the building?

"A. The way it is fixed—yes, it is very rigid.

"Q. And it is permanently affixed, when I am using the [word] 'permanently' I mean it will stay there and remain

there, and could be operated for many years to come, could it not?

"A. Yes, it could.

"Q. And it is affixed solidly to the building from the floor to the ceiling, is it not?

"A. Yes.

"Q. You have got these lag screws in the floor?

"A. That's right.

"Q. And you have it welded to the ceiling?

"A. In four spots, yes.

"Q. And on the front part there is some angle iron that ties it to the pillars?

"A. The front section of the booth that protrudes, yes.

"Q. And there is angle iron bolted to the top of the paint spray booth that is welded to the building?

"A. Yes. . . .

"Q. And how many pieces of iron would you say were welded to the I-beam?

"A. Three."

It was necessary to provide a vent for the paint spray booth so a hole about three feet in diameter was cut in the roof of the building. Two joists 2″ x 12″ were cut. The vent extended above the roof about three feet and had a sheet of metal placed over it to keep the rain from coming down.

The junior Hessell testified to the character of the installation in much the same fashion as did O'Connor. Pictures were received in evidence showing the incorporation of the paint spray booth into the permanent buildings of the service station.

■ Whether particular equipment is so affixed as to become a part of the realty is essentially a question of fact (*Bank of America* v. *New York Life Ins. Co.*, 16 Cal.App.2d 719, 723 [61 P.2d 364]), and the decision in each case depends on its own facts. (*Alderman* v. *Baggett*, 134 Cal.App. 501, 503 [25 P.2d 532].) When a finding is attacked as being unsupported by the evidence the power of a reviewing court begins and ends with a determination as to whether there is any substantial evidence which supports the conclusion reached by the trier of the facts. ■ Also, when two or more inferences can be reasonably drawn from the facts, an appellate court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) ■ Finally, "if there be any reasonable doubt as to the sufficiency of the

evidence to sustain a finding, [an appellate court] should resolve that doubt in favor of the finding . . ." (*Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689].)

Guided by these principles it cannot be said, as a matter of law, that the evidence in this record, disclosing as it does that the paint spray booth was installed with a new concrete base and with a new roof for the portion protruding from the building, by welding in a number of places, by screws and bolts, and by perforations of the roof of the building and by cutting and reinforcing the rafters, does not amply support the finding that the said booth was "permanently affixed to and an integral part of the real property." (Civ. Code, § 660.)

Appellants complain that the court made no finding as to whether the paint spray booth was a trade fixture under section 1019 of the Civil Code.* An express finding on this question was not essential. The case was tried and decided upon the theory that it was a trade fixture. All the evidence would so indicate and we have assumed that it was such a fixture but such fact does not give appellants a right to remove it since the court found, on substantial evidence, that it had become "permanently affixed to and an integral part of" the premises.

Appellants also vainly argue the court should have made a finding as to whether the booth could have been removed without injury to the premises. Such a finding was immaterial in view of the basic finding that the booth "had become an integral part of the premises" for under such circumstances there was no right to remove the booth. (Civ. Code, § 1019.)

There was no prejudicial error in the court's permitting witnesses Hessell, O'Connor and Rogers (who was appellants' witness) to give their opinion that the paint spray booth was permanently affixed to the property. Each of the witnesses had already described in detail the manner in which the booth was attached to the building and the treatment that was provided for the portion that protruded both as to foundation and roof. Since the detailed testimony, as we have previously pointed out, amply supports the court's

*Section 1019 of the Civil Code reads: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

finding on this question, such error, if error it was, could not have been prejudicial.

■ Appellants contend that it was prejudicial error to strike the testimony of the lessee, Rogers, to the effect that at the time the booth was installed he did not intend it to be a permanent fixture. They base such contention on the principle that the intention of the parties is important in determining whether a thing has become affixed and part of the realty or is still personalty. That principle, however, is not here applicable. Rogers' testimony was self-serving because there was no agreement or understanding between him and Mrs. Healey that this paint spray booth could be installed. In fact, its installation was not only without her knowledge and consent but contrary to the express terms of the lease which provided that the lessee ''shall not make *any alterations . . . or any additions* to the improvements'' on the premises without the lessor's written consent. (Emphasis added.) It is thus plain that the owner's consent to this installation was essential and that it must be evidenced in a specific affirmative manner. Such precise provision with respect to alterations and additions makes it unmistakably clear that the lessee's intention alone in such matters was wholly insufficient to determine the character thereof. Consequently, it was not error to strike his testimony on that subject.

Lest there be any misunderstanding of the purport of this decision we specifically point out that this is not an action by a conditional vendor of a chattel against the lessor of the realty either to recover possession thereof or to obtain damages for its conversion since appellants had conveyed title to their vendee. Appellants' liability is predicated upon their unconditional warranty of title and agreement to successfully defend it against all claims and demands.

The judgment is affirmed.

Moore, P. J., concurred.

McComb, J., dissented.

Appellants' petition for a hearing by the Supreme Court was denied April 27, 1955.